435 So.2d 137 (1982)
Jay Moore CARTER
v.
STATE.
1 Div. 281.
Court of Criminal Appeals of Alabama.
April 20, 1982.
Rehearing Denied May 18, 1982.
Certiorari Denied July 23, 1982.
On Return to Remand March 29, 1983.
Rehearing Denied May 31, 1983.
Certiorari Denied July 22, 1983.
*138 Virginia A. Johnstone, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Cedric R. Perry, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 81-727.
Alabama Supreme Court 82-852.
BOWEN, Judge.
The defendant was indicted and convicted for the first degree robbery of George G. Watson, a pharmacist at Skyland Drugs in Mobile. Alabama Code 1975, Section 13A-8-41 (Amended 1977). Sentence was 15 years' imprisonment.

I
The defendant argues that there was no probable cause for his arrest because information gained from an accomplice is not worthy of belief, and consequently the veracity prong of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), was not satisfied.
Five days after the robbery occurred, Gregory Allen Manning was arrested and voluntarily admitted his participation in the crime and implicated the defendant. Based on the information given by Manning in his confession, which corroborated in detail the facts of the initial robbery complaint by the victim, Mobile Police Detective Thomas H. Smith issued an order for the defendant's arrest.
Detective Smith testified that he had had "prior dealings" with Manning and knew that Manning had a "long record for a young man of violating the law." Smith stated that in these prior dealings Manning "has always been straight with me with what he has told me."
When probable cause is based wholly or partly on an informant's statements, the two-pronged test of Aguilar is used to determine the existence of probable cause. Here there is no dispute that the first prong of Aguilar, the basis of knowledge, has been satisfied.
Courts have been "most willing" to find the veracity prong of Aguilar satisfied where the informer is a participant in a serious crime who identifies his accomplice. W. LaFave, 1 Search And Seizure, Section 3.3 at 527 (1978). However, there seems to be a general agreement that, in the case of *139 the accomplice-informant, an admission against penal interest, without more, is not enough to justify a finding of probable cause and is insufficient, in and of itself, to establish the reliability of the informant. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Martin, 615 F.2d 318, 325 (5th Cir.1980); United States v. Ashley, 569 F.2d 975, 981-2 (5th Cir.1978). "Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another." Harris, 91 S.Ct. at 2082.
The existence of probable cause must be determined from the particular facts of each case. Consequently, courts have found that the veracity prong of Aguilar was satisfied and the informant credible where the accomplice-informant's information was not vague but contained a particular description of the "utmost precision", Bernard v. United States, 360 F.2d 300 (5th Cir.1966); where the accomplice-informer related the "underlying circumstances" of the offense which were corroborated by information obtained from eyewitnesses, United States v. Mendoza, 441 F.2d 1107 (9th Cir.1971); where the participant's tip was against his penal interest and was substantially corroborated by other informants, Martin, supra; and where the participant's information was independently corroborated and verified, Ashley, supra; United States v. Sporleder, 635 F.2d 809 (10th Cir.1980); United States v. Hampton, 633 F.2d 927 (10th Cir. 1980), cert. denied, 449 U.S. 1128, 101 S.Ct. 950, 67 L.Ed.2d 116 (1980); see 70 Georgetown L.J. 467, 479, n. 61 (1981).
The issue presented by the veracity prong of Aguilar is whether the informant is "credible" or his information "reliable". Aguilar, 84 S.Ct. at 1514. It has been suggested that, where the "credibility" of the informer is not established in that there is no "track record" of past performance or its equivalent, the veracity prong may still be satisfied, without any resort to independent verification by other circumstances reasonably guaranteeing the reliability of the information on the particular occasion of its being furnished.
"A genuine declaration against penal interest would probably qualify in this regard, even when we know nothing about the source as a person, or even where he is characteristically non-credible. A source's furnishing of information, under clearly apprehended threat of dire police retaliation should he not produce accurately, might also well qualify as such a circumstantial guarantee." Moylan, Hearsay And Probable Cause: An Aguilar And Spinelli Primer, 25 Mercer L.Rev. 741, 762 (1974).
For a comprehensive treatment of statements against penal interests, see Taegue, Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception, 69 Geo.L.J. 851 (1981).
The issue in this case, simply stated, is what is there to show that the accomplice-informer was a "truthspeaker"; what is there that would "induce a prudent and disinterested observer to credit these statements." Harris, 91 S.Ct. at 2082. Probable cause is concerned with "probabilities", that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).
In this case there are three "indicia of credibility", Harris, 91 S.Ct. at 2082, which, when combined, are sufficient to support the finding of probable cause. First is the fact that the accomplice-informant's information constituted a clear admission against his penal interest. Second are the facts that the information itself was not only highly detailed, but corroborated and independently verified by the victim's account of the robbery. Third is the fact that the informant already had a track record of sorts for honesty with Detective Smith. While no single factor would be sufficient when divorced from the others to establish the veracity of the accomplice-informant, the combination is sufficient to lead a reasonable and prudent man to believe that Manning was telling the truth.
*140 Because the police had probable cause to arrest the defendant, his subsequent confession was not inadmissible under Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

II
The defendant contends that the trial court acted arbitrarily and without authority in setting aside its prior order granting the defendant's request to be treated as a youthful offender.
The minute entries of the court reveal the following:
October 6, 1980: "(T)he defendant in open court on this day having waived trial by jury, requested to be treated as a Youthful Offender.
"It is ordered by the court that an Investigation be made to determine if the defendant should be treated as a Youthful Offender and case reset for Youthful Offender Report on January 6th, 1981."
January 7, 1981: "This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with attorney, Virginia Johnston, and thereupon in open court on this day; It is ordered and adjudged by the court that the defendant's request of October 6th, 1980, to be treated as a Youthful Offender by and the same is hereby granted."
February 11, 1981: "This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with his attorney, Barry Hess, and thereupon in open court on this day; It is ordered and adjudged by the Court that the Court order of January 7th, 1981, be and the same is hereby set aside in that no final order was made on the request for Youthful Offender status, due to the fact that there was an error by the secretary of the Court's order on the daily criminal docket sheet.
"After due consideration of the Youthful Offender Investigation report and upon being advised of a subsequent offense having been made against the defendant; It is ordered and adjudged by the Court that the defendant's request for Youthful Offender treatment be and the same is hereby denied."
The defendant was arraigned at this time. On February 17, 1981, defense counsel filed a "Motion for Reconsideration." Attached to that motion was the affidavit of defendant's attorney, Virginia A. Johnston, stating that on January 6, 1981, she appeared in open court with the defendant for a hearing regarding the granting of Youthful Offender status.
"On that date, in open Court, Judge Hogan called the case and held a report in his hand regarding the Defendant. After reviewing the file and record of the Defendant, Judge Hogan granted Jay Moore Carter Youthful Offender status."
The affidavit also includes the alleged reasons and comments made by Judge Hogan in granting treatment as a youthful offender. The affidavit further states that Judge Hogan "explained the consequences of a guilty plea to Youthful Offender" and informed counsel that the defendant's arraignment as a youthful offender would be set for February 5, 1981. The record, apart from this affidavit, contains no evidence of any hearing or action taken on January 6, 1981.
The record shows that on February 20, 1981, the Motion For Reconsideration was denied.
Upon this state of the record, the defendant bases his contention of error by the trial judge in granting and then denying the request for youthful offender status. The defendant argues that there is no authority by which a trial judge may revoke youthful offender status once it has been granted and, alternatively, minimum standards of due process, such as those applicable upon the revocation of probation, are required when youthful offender status is revoked. The defendant strenuously argues that "there was no mistake. There was a judicial `change of mind' which the court arbitrarily accomplished without affording the Appellant any due process." The defendant further argues that once he had been granted *141 youthful offender status certain benefits "vested" to which he became entitled as a matter of right.
A judge has the inherent power to correct any clerical error in order to make the court records speak the truth and reflect what actually occurred. Blakely v. State, 28 Ala.App. 574, 190 So. 102 (1939); Gardner v. State, 21 Ala.App. 388, 108 So. 635 (1926); Lewis v. State, 10 Ala.App. 31, 64 So. 537 (1914).
Also, it cannot be disputed that courts of record have the inherent power to set aside and vacate their orders and judgments, although a judge should not merely "change his mind" without sufficient cause or reason. Bice v. Jones, 45 Ala.App. 709, 718, 236 So.2d 718, cert. denied, 286 Ala. 733, 236 So.2d 727 (1970).
"The rule of the common law is thus stated in 34 Corpus Juris, Section 436, p. 207: `A court has full control over its orders or judgments during the term at which they are made, and may, upon sufficient cause shown, in the exercise of its sound discretion, amend, correct, revise, supplement, open or vacate such judgments. This was the rule at common law, and it prevails in almost all jurisdictions.'"

Schaeffer v. Walker, 241 Ala. 530, 532, 3 So.2d 405 (1941). (emphasis added)
Recitals in the judgment or minute entries import absolute verity unless contradicted by other portions of the record. Jones v. State, 373 So.2d 1221 (Ala.Cr.App.), cert. denied, Ex parte Jones, 373 So.2d 1225 (Ala.1979); Davis v. State, 348 So.2d 844 (Ala.Cr.App.), cert. denied, Ex parte Davis, 348 So.2d 847 (Ala.1977); Honeycutt v. State, 47 Ala.App. 640, 259 So.2d 846, cert. denied, 288 Ala. 743, 259 So.2d 848 (1972).
In this case the minute entry is contradicted by the sworn affidavit of defense counsel. These two documents are in irreconcilable and irredeemable conflict. The order overruling the motion for reconsideration does not settle this disagreement. In order for this Court to decide this matter, indeed, before this Court can even determine what the real issue is in this case, it is essential that we have a correct record of what actually occurred in the trial court.
Therefore, it is ordered that this cause be remanded to the Circuit Court of Mobile County with directions that a hearing be held to determine (1) what, if anything, occurred on January 6, 1981; (2) whether the court's order of January 7, 1981, granting youthful offender status was a "final" judgment; (3) and, if so, why youthful offender status was revoked on February 11, 1981. At the hearing, the factual basis behind each of these issues shall be fully explored. A transcript of the hearing shall promptly be forwarded to this Court for our consideration and review.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
On remand a hearing was held in the circuit court and the circuit judge found that on January 6th nothing occurred and "the case was simply reset until the 7th apparently because the Court did not have a copy of the youthful offender report." It was undisputed that youthful offender treatment had been granted in open court on this date. The circuit judge found that "it was an order and was signed by Judge Hogan and that was the order granting the youthful offender status."
The circuit judge also found that "(s)ubsequent to the granting of youthful offender status and prior to the time the youthful offender status was revoked he did receive notification from the State of Alabama Board of Pardons and Parole that there was another (felony) charge pending in Baldwin County."
Based on the record submitted on return to remand, Judge Hogan denied youthful offender treatment after he had previously granted it because he had received additional information on the defendant's criminal history which he did not have when he initially granted youthful offender treatment. *142 The record reveals that Judge Hogan's action was not arbitrary and was not merely a "change of mind" without sufficient cause or reason. His order denying youthful offender status was within the inherent power of a court to set aside and vacate its orders and judgments upon sufficient cause shown.
The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
DeCARLO, P.J., and TYSON and HARRIS, JJ., concur.