Lester R. Pugh was indicted and convicted for trafficking in cocaine in violation of Alabama Code 1975, Section 20-2-80. Sentence was ten years' imprisonment and a fine of $25,000.00. Three issues are raised on appeal.
 I
There was no reversible error in the refusal of the trial judge to require the disclosure of the informant's identity or in his refusal to allow defense counsel to question an informant about his conversations with a police officer in order to establish the unreliability of that informant.
Mobile Police Officer Jeff Stokes testified that about midmorning on April 14, 1982, he received a telephone call from an informant who told him that the defendant had a large quantity of drugs in his possession and that he would be at the Austin Country Palace. The informant stated that the defendant would be driving a blue and white Lincoln Continental convertible with Alabama plates. He named the defendant and described him as "an older subject with silver gray hair and beard." He said the defendant would be armed with a .22-caliber *Page 390 
pistol with black tape around the handle and that it would be in the defendant's right front pants pocket. The informant told Officer Stokes that he would call again and tell him the exact time the defendant would be at the Country Palace.
Stokes testified that the informant had given him reliable information in the past which had led to several arrests. Stokes stated that the informant told him that he had been with the defendant or he had talked to him "and that's how he got his information." Stokes testified that his informant told him that he had talked with the defendant "that day," and Stokes stated that the basis of his informant's knowledge was the informant's conversation with the defendant.
At approximately 4:15 that afternoon, the informant called a second time and spoke with Stokes' partner, Officer Robert Osborne, because Stokes was not available. The informant told Osborne that the defendant would be at the Country Palace at 5:00.
The Federal Drug Enforcement Agency was notified and city and federal agents converged and established surveillance of the Country Palace.
The defendant arrived in the Lincoln as the informant had indicated. He remained at the Country Palace for 20 or 30 minutes and left. The defendant was followed and stopped by both federal and city drug agents. The defendant was ordered out of his car and frisked and the .22-caliber revolver described by the informant was removed from the defendant's right front pocket. The informant's description of the defendant and the vehicle was "exact".
Officer Robert Osborne also testified at the hearing on the motion to suppress. While Officer Stokes was frisking the defendant, Officer Osborne observed "a towel rolled up in a circular fashion with a baggie protruding from one end of the towel" on the driver's side of the floorboard. The baggie "appeared to contain some white powder," which Osborne believed to be cocaine. Osborne observed this while standing outside the defendant's car and without making "any special effort."
The defendant's Lincoln was searched. Discovered were a .38 pistol and a set of triple beam balance scales of the type "very often [used] among drug dealers."
On the motion to suppress, Thomas Michael Payne testified as a defense witness. Payne testified that he first met Officer Stokes when Stokes arrested him on March 19, 1982, for three cases of possession of a controlled substance. During the 26-day period from March 19, the date of Payne's arrest, until April 14, the date of the defendant's arrest, Payne had between five and ten conversations with Stokes. The trial judge would not allow Payne to testify that he was the informant in the defendant's case, and would not permit him to testify to the contents or substance of these conversations.
Payne testified that the defendant was a drug dealer and that he [Payne] was also involved in the drug business. Payne stated that he called Officer Stokes on the morning of April 14 and told him that the defendant was in town and would probably have some drugs with him. Payne telephoned Officer Osborne around 5:00 that afternoon and told him that he "was fixing to meet Lester Pugh to pick up some drugs from Lester Pugh." Payne told Osborne that he had seen the defendant since the time he had talked with Officer Stokes that morning. Payne testified that he saw the defendant three times on the day of April 14. On one occasion, he saw the defendant with drugs. He saw the defendant with drugs before he telephoned Officer Osborne.
Defense counsel attempted to question Payne about any conversations he had with Officer Stokes after his arrest on March 19 "about anybody else other than" the defendant. Defense counsel argued that Payne was not a reliable informant and that he had not supplied any information that led to any arrest, and that, consequently, the officers did not act in good faith in relying on Payne's information. The trial judge refused to allow defense *Page 391 
counsel to pursue this matter because it had not been established that Payne was the informant in the defendant's case.
Payne was on three years' probation from three drug convictions. State Probation and Parole Officer David Green testified that he was present when Stokes and Payne had a conversation in the courthouse before trial in which Officer Stokes told Payne to tell the truth.
The trial judge then denied the motion to suppress.
As a general rule, the prosecution in a criminal case has the privilege to withhold the identity of informants. Roviaro v.United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege is not absolute but is subject to certain limitations governed by a test balancing the defendant's need for disclosure to ensure a fair trial against the public's interest in preserving the informant's anonymity to encourage citizens to report crime. Roviaro, 353 U.S. at 59-62,77 S.Ct. at 627-28; 21 Am.Jur.2d Criminal Law § 778 (1981); 33 P.O.F.2d 549, Criminal Law: Need For Disclosure Of Identity OfInformant; Annot., 76 A.L.R.2d 262 (1961).
In this case, disclosure of the informant's identity was sought on the issue of whether there was probable cause for the arrest and search of the defendant rather than on the question of the defendant's guilt or innocence. Defense counsel sought to show that there was no probable cause because the informant was not reliable.
In such a case, disclosure turns on whether the informant's information forms the sole basis for the probable cause.
 "Specific rules are applicable where disclosure of the identity of an informer is sought by the defense in connection with an issue as to the legality of an arrest and search made without warrant, in a situation in which the prosecution attempts to show `probable cause' or `reasonable grounds' justifying the arrest and search and relies, at least to some extent, upon communications of an informer. Apart from a few cases which apparently hold that in this situation the privilege of nondisclosure is absolute and other cases which hold that the decision is within the discretion of the trial court, the generally adopted rule seems to be that disclosure is required unless there was sufficient evidence apart from the informer's communication to establish the validity of the arrest and search." 76 A.L.R.2d at 270; 33 P.O.F.2d at 572-75.
Where disclosure is sought in connection with an issue as to the legality of an arrest or search without a warrant, and communications by an informer are claimed by the prosecution to establish probable cause, "[t]he controlling rule is that disclosure of the informer's identity is required . . . unless there was sufficient evidence apart from his communication to establish probable (or reasonable cause)." 76 A.L.R.2d at 329. "[D]isclosure of the identity of an informant cannot be required, where the legality (probable or reasonable cause; consent) is established by evidence apart from the informer's communication." 76 A.L.R.2d at 331. "As regards the issue of the legality of an arrest or search without warrant, the privilege of nondisclosure does not apply, and the identity of an informer must be disclosed, where there is no showing of probable (reasonable) cause apart from the informer's communication." 76 A.L.R.2d at 338.
Under the general rule, it was error for the trial judge to protect the identity of the informant. However, under the facts of this case, that error was harmless. 76 A.L.R.2d at 305. See also Kenny v. State, 51 Ala. App. 35, 36, 282 So.2d 387, cert. denied, 291 Ala. 786, 282 So.2d 392 (1973).
Even if the informant, assuming that it was Payne, had never supplied the police with any prior information, the facts support a finding of his reliability in this particular case. An informant need not have a "track record" before his veracity can be established. W. LaFave, 1 Search and Seizure, 510, 522 (1978).
At the time of the defendant's arrest, Payne had either agreed to cooperate with *Page 392 
the police in exchange for probation as defense counsel contended or he had agreed to voluntarily cooperate. He incriminated himself by telling Officer Osborne that he was going to pick up some drugs from the defendant. Even if we accept all of the defendant's contentions, we still remain convinced of Payne's reliability. If Payne were facing charges, he would not give the police false information and jeopardize any deal that might be struck. If Payne were already on probation, it is reasonable to assume that he would not risk revocation by continuing his drug business or by supplying false information to the police.
Even under the Aguilar-Spinelli test, the record supports a finding that the veracity prong was satisfied. Under that prong, the State must show that the informant was credible or his information was reliable. A statement against penal interest establishes a substantial basis for crediting an informant's tip based on personal information. Palmer v. State,426 So.2d 950, 951 (Ala.Cr.App. 1983).
On the witness stand, Payne testified that he knew the defendant "very well" and that he was going to pick up 100 Preludins from him that afternoon. In our opinion, any doubt about Payne's credibility was erased once he testified as a witness called by the defendant. In other words, in attempting to show that Payne was unreliable, the defendant proved that Payne was credible and his information reliable.
 II
Acting on the information provided by his informant, Officer Stokes had probable cause to arrest the defendant and search his car. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983); McClellan v. State, 415 So.2d 1238
(Ala.Cr.App. 1982); Reed v. State, 368 So.2d 326 (Ala.Cr.App. 1979); Kirkland v. State, 342 So.2d 806 (Ala.Cr.App.), cert. denied, Ex parte Kirkland, 342 So.2d 810 (Ala. 1977).
The present test for determining whether an informant's tip establishes probable cause is the flexible totality-of-the-circumstances test of Illinois v. Gates, supra. The two prongs of the test of Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. UnitedStates, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), involving the informant's veracity or reliability and his basis of knowledge, "are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 103 S.Ct. at 2329. Here, the defendant's concentration on the informant's reliability focuses attention "on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate."Gates, 103 S.Ct. at 2330. A consideration of the totality of the circumstances provides the necessary probable cause. Probable cause involves "a practical, common-sense decision whether, given all the circumstances, . . . including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 103 S.Ct. at 2332.
 III
There was a discrepancy between two State witnesses as to the amount of cocaine found in the defendant's car, one testifying that 85 grams was found, the other that there was only 80 grams. The offense of trafficking with which the defendant was charged applies where there is 28 grams or more of cocaine. Alabama Code 1975, § 20-2-80. There was no reasonable theory from the evidence to support a jury verdict that the defendant was guilty of possessing less than 80 grams of cocaine. Under the evidence the defendant was either guilty or not guilty of trafficking. The requested instruction on the offense of simple possession of cocaine was properly denied. Hopper v. Evans, *Page 393 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.