26 So.3d 458 (2007)
STATE of Alabama
v.
Wayne Lamar JENKINS.
CR-05-1833.
Court of Criminal Appeals of Alabama.
May 25, 2007.
Rehearing Denied August 17, 2007.
*459 Troy King, atty. gen., and Tracy Daniel, asst. atty. gen., for appellant.
Davis Whittlesey, Opelika, for appellee.
WISE, Judge.
The State of Alabama appeals from the trial court's grant of Wayne Lamar Jenkins's pretrial motion to suppress evidence he says was illegally seized. See Rule 15.7, Ala. R.Crim. P.
The record indicates that on April 22, 2005, Capt. Van Jackson of the Lee County Sheriff's Department received a telephone call from an individual named Ronnie Paul, who resides at Lee Road 482. Paul said that he had seen four men who were attempting to break into his neighbor's home at Lee Road 212. Paul provided a detailed description of the four men and described the vehicle they were driving. Shortly thereafter, sheriff's deputies stopped a vehicle in the vicinity of Lee Road 212 that matched the description given by Paul. Capt. Jackson testified that the two men inside the vehicle admitted that they had tried to break into the residence located at 100 Lee Road 482, Apartment # 2. Based on information received from the two men, the two other suspects were eventually located, and all four were arrested. Capt. Jackson stated in his affidavit in support of his application for a search warrant as follows:
"After being advised of their rights, all four subjects stated that they had attempted to break into the home because they know that the owners keeps [sic] large sums of marijuana inside the residence. One of the four defendants, Michael Stanford, stated that over the past six months, he has purchased at least an ounce of marijuana from Wayne every week. According to Stanford, each of these transactions occurred in Wayne's home and there was a large quantity of marijuana present inside the residence. The Lee County Sheriff's Office was able to confirm through a tag placed on a vehicle in the front yard of the home that Wayne Lamar Jenkins is the owner of the residence. A check of Jenkins' criminal history revealed that he was arrested in 1979 on drug related charges."
(C.R. 48.)
One of the four suspects apprehended by law-enforcement officers, Michael Stanford, gave an interview and stated that he tried to break into Jenkins's apartment to steal Jenkins's marijuana. Stanford, who knew Jenkins only as "Wayne," stated that he had been regularly purchasing marijuana from Wayne for around six months. Stanford told police that he would buy an ounce of marijuana each week and that Wayne always had a large supply available. Stanford recalled that on one occasion, Wayne had four gallon containers that were full of marijuana. Stanford said that at the present time, Wayne probably had at least a pound of marijuana in his apartment. Stanford told investigators that he had purchased 1/2 ounce of marijuana *460 from Wayne approximately two weeks before the attempted burglary. Stanford said that he and his three friends had been watching the apartment on the day before the attempted burglary to observe the neighborhood and prepare for their attempt.
The three other suspects all stated that they had attempted to burglarize Jenkins's apartment to steal Jenkins's marijuana. They stated that Jenkins kept a large amount of marijuana in his home and that they all decided to break in and steal the contraband. However, none of these three suspects had any personal knowledge that Jenkins kept marijuana inside his apartment.
A search warrant was ordered for any and all vehicles, people, or buildings located on or within the curtilage of the residence of 100 Lee Road 482, Apartment # 2, Smiths, Lee County, Alabama, identifying the address as that of Wayne Lamar Jenkins. The warrant authorized a search of the residence for any and all drugs, contraband, or items associated with, but not limited to the use, sale, and/or storage of, such items. The search warrant was issued to Capt. Van Jackson on April 22, 2005.
During the search, law-enforcement officials found over five pounds of marijuana, plastic bags, a financial ledger, a .38-caliber pistol with a box of ammunition, scales, a grinder, rolling papers, and approximately $5,000 in cash. Officers also found a marijuana cigarette in Jenkins's automobile. In his statement to law-enforcement officers, Jenkins admitted that he had been selling marijuana for approximately six months. He stated that the cash found in his apartment was proceeds from the sale of marijuana. He also stated that he had previously been arrested in Russell County for driving under the influence and possession of marijuana.
In June 2006, a suppression hearing was held in the trial court. At the hearing, Capt. Jackson testified regarding the circumstances that led to his application for the search warrant. Capt. Jackson stated that on April 22, 2005, the sheriff's office received a telephone call from Ronnie Paul, who told him that he had observed four men attempting to break into a neighbor's home. Capt. Jackson testified that Deputy Bill McQuire responded to the call and talked with Paul. Paul gave Deputy McQuire a description of the four men, along with a description of the car they were driving. Capt. Jackson said that, after receiving that information from Deputy McQuire, he spotted a car matching the description less than 1/2 mile from the scene of the attempted burglary. Capt. Jackson said that there were two men in the car and that both were taken into custody and interviewed. Before the two men were taken into custody Paul identified them as two of the individuals who attempted to burglarize Jenkins's residence.
After the two men were taken into custody and interviewed, the names of the two remaining suspects were disclosed. Eventually all four men, including Stanford, were interviewed. Capt. Jackson testified that the four men each said that they had attempted to break into Jenkins's apartment to steal marijuana. Capt. Jackson established that he had had no contact with Stanford before Stanford's arrest in this case. Capt. Jackson testified that, after reviewing the statements of the suspects, he prepared an affidavit to support the request for a search warrant. Before he applied to the court for the warrant, Capt. Jackson said that he and other officers verified the identity of the individual whom one of the suspects identified as "Wayne" by running a license-plate check through law-enforcement databases with *461 the license number on the automobile parked in front of the residence. That exercise revealed that the owner of the automobile was Wayne Lamar Jenkins. In addition, officers contacted the landlord of the apartment complex, and that individual verified that the apartment was leased to Wayne Lamar Jenkins. Capt. Jackson added that during the course of the investigation, a criminal-background check was conducted, which revealed that Jenkins had had a prior drug arrest in Russell County in 1979.
Capt. Jackson went to Jenkins's apartment and conducted the search. During the search, Jenkins was present on the porch of the apartment with other officers. After the search concluded, Capt. Jackson interviewed Jenkins inside the apartment. Jenkins was advised of his Miranda[1] rights. After he waived his rights, Jenkins gave a statement in which he admitted selling marijuana from his apartment.
At the conclusion of the evidence at the suppression hearing, the trial court initially denied Jenkins's motion. Defense counsel asked the trial judge to accept a brief on the issue before it rendered its judgment. The trial court granted defense counsel's request; the court also granted the State an opportunity to respond to defense counsel's brief. On June 28, 2006, the trial court changed its initial denial of Jenkins's motion to suppress and issued an order granting Jenkins's motion to suppress.
On appeal, the State argues that the trial court erred when it granted Jenkins's motion to suppress evidence. Specifically, the State argues that, contrary to Jenkins's assertions that there was no probable cause to conduct a search based on the unreliable, unverified information from a confidential informant, there was sufficient probable cause to support the issuance of the search warrant, and the judgment of the trial court should be reversed.
When determining probable cause, "[a]n issuing judge's determination that sufficient probable cause existed to support the warrant is `entitled to great deference and is conclusive in the absence of arbitrariness,'" Wamble v. State, 593 So.2d 109, 110 (Ala.Crim.App.1991), quoting United States v. Pike, 523 F.2d 734 (5th Cir.1975). A reviewing court need determine only that a magistrate or judge had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Sullivan v. State, 651 So.2d 1138 (Ala.Crim.App.1994); McCray v. State, 501 So.2d 532 (Ala.Crim.App.1986). This Court has previously stated:
"`The present test for determining whether an informant's tip establishes probable cause is the flexible totality-of-the-circumstances test of Illinois v. Gates, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)]. The two prongs of the test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), involving informant's veracity or reliability and his basis of knowledge, "are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, [462 U.S. at 223,] 103 S.Ct. at 2329.... Probable cause involves "a practical, common sense decision whether, given all the circumstances, *462 ... including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, [462 U.S. at 238,] 103 S.Ct. at 2332.'
"Pugh v. State, 493 So.2d 388, 392 (Ala. Cr.App.1985), aff'd, 493 So.2d 393 (Ala. 1986).
"`Reference to a confidential informant's "track record" of past performances is a viable means of determining his credibility.' Reese v. State, 456 So.2d 341, 349 (Ala.Cr.App.1982), cert. denied, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983). See also Moynes v. State, 568 So.2d 392, 393 (Ala.Cr.App. 1990); Carter v. State, 435 So.2d 137, 139 (Ala.Cr.App.1982).... In addition, corroboration supplied by the personal observations of the police officers lends support to the reliability and veracity of the informant. See Moynes, 568 So.2d 392; Dale v. State, 466 So.2d 196 (Ala. Cr.App.1985)."
Money v. State, 717 So.2d 38, 42-43 (Ala. Crim.App.1997). Additionally, the State is not required to show that the informant has proven to be reliable any particular number of times. See Reese v. State, 456 So.2d 341 (Ala.Crim.App.1982).
"The fact that a confidential informant has not supplied information numerous times does not mean that the informant is not reliable. Kirk [v. State,] 612 So.2d [1252] at 1254 [(Ala.Crim.App. 1993)]. Common sense dictates that a confidential informant `must be a first time informer before [the informant] can inform a second time.' 612 So.2d at 1254."
Usery v. State, 668 So.2d 919, 921 (Ala. Crim.App.1995).
The record contains the order of the trial court granting Jenkins's motion. In that order, the trial court found that because the search warrant contained the general term "drugs" rather than a more specific designation "marijuana," the search warrant permitted law-enforcement officers to conduct an unconstitutional general search for any and all drugs. Because the affidavit in support of the request for the search warrant specifically identified "marijuana," the trial court held that the search warrant should have been equally specific.
In addition, the order indicates that the trial court found that the statements from the three other suspects who were with Stanford when the attempted burglary occurred did not support that portion of the affidavit in which Capt. Jackson stated that all four suspects said that they knew that the resident of the apartment kept large amounts of marijuana inside the apartment. The trial court further stated that the three other suspects knew about the marijuana only because the fourth suspect, Stanford, told them about it and not, as the affidavit stated, from personal knowledge. The trial court notes that in his statement to police, Stanford did not say that each time he bought drugs from Jenkins that the drug transactions took place in Jenkins's apartment.
The trial court also found that, although Stanford's statement supported Capt. Jackson's averment regarding large amounts of marijuana kept at Jenkins's apartment, Capt. Jackson never addressed Stanford's credibility. The trial court specifically noted that there was no comment on Stanford's reliability as an informant, there were no underlying circumstances identified from which Jackson could have concluded that the informant was credible or that his information was reliable.
In any event, the court did find that Stanford's statements that he had been *463 purchasing marijuana from Jenkins for approximately six months and that he bought over an ounce of marijuana in one week's time established that the period of two weeks since his last purchase of 1/2 ounce of marijuana was not a period of time that would, if supported by additional information, be too stale to allow the issuance of a search warrant.
Here, we believe that the trial court incorrectly determined that the search warrant authorized an unconstitutional "general search" for all drugs in Jenkins's apartment. We recognize that
"[g]eneral exploratory searches and seizures, with or without a warrant, can never be justified and are forbidden and condemned. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). The specific command of the Fourth Amendment to the Constitution of the United States is that no warrants shall issue except those `particularly describing the ... things to be seized.'
"However, the description of things to be seized contained in the warrant under review is not so broad that the authorization constitutes a general exploratory search. Certainly, `an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.' Vonder[A]he v. Howland, 508 F.2d 364 (9th Cir.1974); W. LaFave, 2 Search and Seizure, Section 4.6, n. 11 (1978)(hereinafter Search).
"However, a less precise description is required of property which is, because of its particular character, contraband.
"`"If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character."'
"2 Search, p. 101, citing People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970)."
Palmer v. State, 426 So.2d 950, 952 (Ala. Crim.App.1983).
Thus, in the instant case, the search warrant sufficiently described that law-enforcement officers were authorized to search for illicit drugs, which would include, but not be limited to, marijuana. Thus, the search was lawful, and the trial court erred when it granted Jenkins's motion to suppress.
The State also argues that the trial court erred when it found that the prosecution had failed to establish the reliability of Michael Sanford, who supplied police with the information about the marijuana inside Jenkins's apartment. At the suppression hearing, both defense counsel and the trial court referenced Sanford as an "informant." Jenkins's argument on appeal is that no proof was offered that Sanford had assisted law enforcement in the past, and there was no proof of his veracity.
As noted in this opinion, this Court has previously held that the fact that an informant has never given information before does not suggest that his information is per se unreliable. See McCray v. State, 501 So.2d 532 (Ala.Crim.App.1986).
Based on the totality of the circumstances, the search warrant was supported by probable cause. Accordingly, the order denying the motion to suppress is reversed and this case is remanded to the circuit *464 court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MCMILLAN, J., concurs. BASCHAB, P.J., and SHAW, J., concur in the result. WELCH, J., concurs in the result, with opinion.
WELCH, Judge, (concurring in the result).
In its opinion reversing the trial court's order granting Jenkins's pretrial motion to suppress evidence, the main opinion holds that the trial court's ruling was in error because, it reasons, the warrant authorized law-enforcement officers to conduct a search for "drugs," and that description was constitutionally sufficient. In reaching its conclusion, the majority relies upon this Court's decision in Palmer v. State, 426 So.2d 950 (Ala.Crim.App.1983). However, because Palmer is distinguishable from the instant case, I disagree with the majority's analysis as to this issue. Therefore, I concur in the result.
Palmer involved a challenge to a warrant that authorized a search for "`cocaine,... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act.'" 420 So.2d at 952. This Court determined that the portion of the warrant authorizing a search specifically for cocaine was constitutionally sufficient and was severable from the portion authorizing a search for "any other illegal substance," which was deemed invalid for lack of probable cause. Ultimately in Palmer the drugs were admitted under the plain-view exception to the warrant requirement.
In the present case, the description in the warrant of "drugs," even if characterized as illicit or contraband, is vague and overly broad, because it is a generic term that could potentially apply to a wide variety of items.[2] However, the good-faith exception articulated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable to the facts of this case. Because the officers' reliance on the determination of the magistrate who issued the search warrant and found probable cause to exist was objectively reasonable, suppression of the contraband seized pursuant to the warrant was inappropriate. Therefore, I concur in the result.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In Peavy v. State, 336 So.2d 199, 201 (Ala. Crim.App.1976), this Court determined that a search warrant describing "`[a]ny controlled substances prohibited by the laws of the State of Alabama'" failed to pass constitutional muster in that it authorized a general exploratory search.