We granted certiorari in this case to consider the question of whether this defendant, in attacking the State's probable cause for his warrantless arrest and search, was entitled to learn the identity of a confidential police informant.
The facts are as follows:
About midmorning on April 14, 1982, Officer Jeff Stokes, a narcotics and vice detective for the Mobile Police Department, received a telephone call from a confidential police informant. The informant told Officer Stokes that a man named Lester Pugh, the defendant, was presently in Mobile and that he had a large quantity of drugs in his possession. The informant said that Pugh would deliver these drugs to someone unknown after Pugh left Austin's Country Palace, a nightclub on Halls Mill Road in Mobile. Furthermore, the informant told Officer Stokes that Pugh was armed with a pistol that had black tape around the handle and which he carried in his right, front pants pocket.
The informant provided Officer Stokes with a description of Pugh (an "older [white man] with silver gray hair and beard" who "resembled Kenny Rogers"[1]) and with a description of Pugh's vehicle ("a blue and white Lincoln Continental with a convertible top with Alabama plates"). The informant told Officer Stokes that he would call him back and tell him the "exact time" that Pugh would be at Austin's Country Palace.
After receiving the informant's information, Officer Stokes made arrangements with local and federal law enforcement agencies to assist him in arresting Pugh. He, however, made no effort to obtain an arrest or search warrant. *Page 394 
At 4:15 that same day, the informant called again and talked with Officer Robert Osborne, Stokes's partner. The informant repeated the information he had previously given to Officer Stokes and then told Officer Osborne that Pugh would arrive at Austin's Country Palace at 5:00 p.m.
Stokes and Osborne, accompanied by city and federal agents, set up surveillance of Austin's Country Palace. At 5:00, a blue and white Lincoln Continental convertible arrived. The driver, who looked like Kenny Rogers, got out and went inside the bar. He stayed twenty or thirty minutes, then came out and left in the same car. The surveillance group, in three unmarked vehicles, followed Pugh a short distance. Then, by positioning their vehicles in front, in back, and to the side of the Lincoln, the law enforcement officers forced Pugh to pull the car off the road.
Officer Stokes left his vehicle with his badge in one hand and a gun in the other. He told Pugh to get out of the car. As Pugh was doing so, Officer Stokes further told him to turn around and put his hands on the car. Pugh complied. Officer Stokes "patted down" Pugh, and found a pistol with black tape around the handle in Pugh's right front pants pocket. Officer Stokes asked Pugh if he had a permit for the pistol, and Pugh replied that he did not. At this time, Officer Stokes told Pugh that he was under arrest for carrying a pistol without a permit.
While Officer Stokes was dealing with Pugh, Officer Osborne left the vehicle he had been in, and walked up to the Lincoln Continental. Without any "special effort," he said, he observed, in the driver's side floorboard of the car, a "towel rolled up in a circular fashion with a baggie protruding from one end of the towel." Officer Osborne said that the "baggie" (a small plastic bag), "appeared to contain some white powder." Officer Osborne reached into the car and picked up the towel containing the bag. He gave it to Officer Stokes.
Thereafter, Officer Osborne completely searched the car. He found a .38-caliber Charter Arms revolver in the driver's right armrest compartment. His search of the car's trunk produced a triple beam balance scale.
Pugh was indicted for unlawfully possessing in excess of 18 grams of cocaine. Code 1975, § 20-2-80. After being arraigned and pleading not guilty, defendant Pugh made a motion to suppress
 "as evidence any and all items seized, test results concerning items seized, testimony regarding any observations made of Defendant's person while Defendant was under arrest that is intended to be used against the Defendant and that are now being held by the District Attorney's office."
As grounds for his motion, defendant stated, inter alia, that "Defendant's arrest was made without warrant and without authority and without probable cause to believe that a felony had been committed, and that Defendant had committed it, and therefore, the search and seizure were not made incident to a lawful arrest" and "the articles which the District Attorney intends to use against Defendant were obtained pursuant to an unlawful search and seizure" in violation of "Article One, Sections 4, 6 and 7 of the Constitution of Alabama of 1901." The trial court denied defendant's motion to suppress. Defendant renewed his motion just prior to trial.
The court held a hearing on defendant's suppression motion. At the hearing, as proof of probable cause for the warrantless arrest and search, both officers, Stokes and Osborne, testified to the content of their telephone conversations with the unidentified informant. Officer Stokes also testified in detail about the informant's past reliability. Defendant cross-examined both officers. The State, however, objected to every defense question directly concerning the identity of the informant or which might tend to reveal the identity of the informant, and the trial court sustained these objections.
In an effort to somehow discredit the State's offer of proof of probable cause, defendant called one Thomas Michael Payne to testify. In questioning Payne, *Page 395 
defendant attempted to prove that he, Payne, was the unidentified informant. Again, the State objected to every defense question which might reveal whether Payne was or was not the informant. And, again, the trial court sustained the State's objections.
The substance of Payne's testimony is detailed in the Court of Criminal Appeals' opinion. Pugh v. State, 493 So.2d 388
(Ala.Crim.App. 1985). We need not reiterate it here. Suffice it to say that it does seem likely that Payne was the informant, although defendant was never allowed to conclusively prove this. Furthermore, Payne's testimony as to the conversations he had with the officers on the day Pugh was arrested did vary in some degree from the officers' accounts of their conversations with the informant.
The trial court found that the State had sufficient probable cause to make the warrantless arrest and search, and it again refused to suppress the evidence against defendant.
The case proceeded to trial, and the jury found defendant guilty as charged. The trial court sentenced him to ten years' imprisonment and fined him $25,000.
Defendant Pugh appealed his conviction to the Alabama Court of Criminal Appeals. That court affirmed his conviction. Pughv. State, 493 So.2d 388 (Ala.Crim.App. 1985). Defendant petitioned this Court to issue a writ of certiorari to the Court of Criminal Appeals, which we did. We now have before us this question:
 "When a defendant challenges the State's probable cause for conducting a warrantless arrest and search, must the State disclose the name of a confidential police informant whose information it relies on to establish sufficient probable cause for the arrest and search?"
In deciding the issue before us today, most courts begin with the United States Supreme Court cases of Roviaro v. UnitedStates, 353 U.S. 53, 77 S.Ct. 723, 1 L.Ed.2d 639 (1957), andMcCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62
(1967).
In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court granted certiorari "in order to pass upon the propriety of the nondisclosure of the informer's identity." Id. at 56. The District Court for the Northern District of Illinois had found Roviaro guilty of selling "heroin to one `John Doe' in violation of 26 U.S.C. § 2554 (a)" and of "fraudulently and knowingly receiv[ing], conceal[ing], buy[ing] and facilitat[ing] the transportation and concealment after importation of . . . heroin, knowing the same to be imported into the United States contrary to law." Id. at 55. The court sentenced Roviaro to two years' imprisonment and fined him $10.Id. at 56.
Before the United States Supreme Court, Roviaro argued that "the trial court erred in upholding the right of the Government to withhold the identity of John Doe." Id. at 58. The Court,per Justice Burton, began its analysis with a generalized discussion of the "Government's privilege of nondisclosure":
 "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform their obligations.
 "The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.
 "A further limitation on the applicability of the privilege arises from the fundamental *Page 396 
requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.
"* * *
 "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 59-62. (Citations omitted.)
In applying the foregoing to Roviaro's situation, the Court said:
 "This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that [John] Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." Id. at 64-65.
Keeping in mind that the Court in Roviaro balanced the public policy of protecting police informants against a defendant's right to prepare his defense, we now turn to McCray v.Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), in which the public policy of nondisclosure was balanced against a defendant's right to challenge the government's probable cause. In McCray, the defendant challenged the State's probable cause in making a warrantless arrest and search. The State contended that information from a confidential police informant provided the necessary probable cause. Unlike Roviaro, where the informant was an active participant in the crime, in McCray the informant merely supplied police with information that defendant was "`selling narcotics and had narcotics on his person and that he could be found in the vicinity of 47th and Calumet at this particular time.'" Id. at 302,87 S.Ct. at 1058. The police accompanied the informant to 47th and Calumet, where the informant identified McCray and pointed him out to the police. The informant then left. Upon an arrest and search of McCray, the police did indeed find heroin.
Before trial, McCray made a motion to suppress the evidence obtained in the warrantless arrest and search because the police lacked probable cause. At the hearing on the motion, the police officers who communicated with the informant testified to the content of their communication with the informant and to the reliability of the informant. The trial court repeatedly sustained objections to the defendant's questions as to the identity of the informant, and ultimately held that the State had probable cause, so the evidence would not be suppressed.
The United States Supreme Court upheld the trial court's finding of probable cause: "There can be no doubt, upon the basis of the circumstances related by Officers Jackson and Arnold, that there was probable cause to sustain the arrest and incidental *Page 397 
search in this cause." Id. at 304, 87 S.Ct. at 1059. Furthermore, the Supreme Court found that the trial court did not err in refusing to order the State to reveal the identity of the informant. The Court said:
 "In permitting the officers to withhold the informant's identity, the court was following well-settled Illinois law. When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant." Id. at 305, 87 S.Ct. at 1059.
The Court also wrote:
 "In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search."[2] Id. at 312, 87 S.Ct. at 1063.
Thus, according to the McCray Court, the public policy of protecting police informants outweighed a defendant's need for informant disclosure for purposes of challenging the State's probable cause.
We find the instant case to be on point with McCray. In Alabama, the question of disclosure or nondisclosure of a confidential police informant's identity for the purposes of challenging probable cause is a matter of discretion for the trial court. New v. State, 337 So.2d 1355, 1358 (Ala.Crim.App. 1976). If the court does not abuse its discretion in granting or denying disclosure, we do not disturb its order. Here, we find no abuse of discretion. Accordingly, we affirm the judgment of the Court of Criminal Appeals on this issue, but not on the same ground that court used. Court of Criminal Appeals found that the trial court erred in not requiring disclosure of the informant's identity, but the court affirmed the judgment of conviction because it found the trial court's ruling to be harmless error. Therefore, although we find that the Court of Criminal Appeals erred in holding that disclosure was required, we reach the same result reached by the Court of Criminal Appeals.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
[1] An apparent reference to a well known singer-entertainer known by that name.
[2] The Court rejected McCray's argument that he was entitled to know the identity of the informant as a matter of federal constitutional law under either the Due Process Clause of the Fourteenth Amendment or the Sixth Amendment's right to confrontation. Instead, the Court explained that the "Government privilege" is simply a rule of evidence which raises no constitutional questions. Id. at 312-13.