MADDOX, Justice
(dissenting).
This is an important case involving the sufficiency of a search warrant based upon information furnished to a police officer by a confidential informant. By quashing the writ as having been improvidently granted, the majority allows the opinion of the Court of Criminal Appeals to stand, and that opinion, in my judgment, fails to follow the law of the land with regard to the sufficiency of a search warrant. Because I believe that the decision of this Court to quash the writ is incorrect, I must respectfully dissent.
The pertinent facts were set out in the State’s Rule 39(k), A.R.A.P., motion, and I include in this dissenting opinion only those facts necessary to show the basis for my disagreement. Hudson was arrested and indicted for the possession of cocaine, in violation of Ala.Code 1975, § 20-2-70. He filed a pre-trial motion to suppress the state’s evidence on the ground that the search warrant was deficient, in that there was no showing that the informant, who supplied the information to the police officer that led to the issuance of the warrant, was reliable. The trial judge denied his motion to suppress the evidence, and Hudson pleaded guilty, but he reserved his right to appeal the trial court’s denial of his motion to suppress.
On original deliverance, the Court of Criminal Appeals affirmed Hudson’s conviction, but, upon application for rehearing •withdrew its opinion, and substituted one that reversed Hudson’s conviction, basing its decision upon a companion case, Hannah v. State, 497 So.2d 837 (Ala.Crim.App. 1986), in which the state did not request this Court’s review.
*947 The state’s application for rehearing was denied, and the state asked this Court to review the Court of Criminal Appeals’ final decision on the ground that it conflicted with this Court’s decision in Ex parte Pugh, 493 So.2d 393 (Ala.1986). This Court granted the writ to review this single question.
As already stated, the Court of Criminal Appeals, in its final decision, relied upon its case of Hannah v. State, 497 So.2d 837 (Ala.Crim.App.1986), which arose out of the same core facts as those that resulted in Hudson’s arrest and conviction. Hannah, in fact, was arrested at Larry Hudson’s house on the same day Hudson was arrested and pursuant to the same warrant that authorized the search of Hudson’s residence.
In Hannah, the Court of Criminal Appeals held, in part, as follows:
“While the record indicates that some investigation had been going on for approximately a month and a half, the record is devoid of any evidence supporting a finding of probable cause for the search warrant, excepting the informant’s tip. In addition, the trial court exempted the State from the reliability requirement in order to prevent disclosure of the informant’s identity. Thus, there was no real showing that the informant who provided the information was a reliable source.
“Because there was no additional support for the informant’s tip nor a showing of reliability, this case must be reversed and remanded.”
I set out below the affidavit made by Officer Locklar, because the sufficiency of the affidavit is the sole question presented for this Court’s review:
“That the Affiant has a confidential and reliable informant, hereinafter known as ‘A’, who went to 1721 West Street, Montgomery, Alabama, on one occasion in July, 1985 and observed a quantity of cocaine being used and sold.
“Further probable cause being that on a second occasion in July, 1985, ‘A’ went to 1721 West Street, Montgomery, Alabama, and observed a quantity of cocaine being used and sold.
“Further probable cause being that on an occasion in August, 1985, ‘A’ went to 1721 West Street, Montgomery, Alabama, and observed a quantity of cocaine being used and sold.
“Further probable cause being that in the last seventy-two (72) hours ‘A’ went to 1721 West Street, Montgomery, Alabama, and observed a quantity of cocaine being used and sold.
“Further probable cause being that ‘A’ can distinguish cocaine from other such white powdery substance.
“Further probable cause being that South Central Bell records show that Larry Hudson has the phone service at 1721 West Street, Montgomery, Alabama.
“Further probable cause being that ‘A’ has given Affiant information which is against ‘A’s better interest.
“Further probable cause being that ‘A’ has given to Affiant information which has proven to be true through investigative means.”
Because the state did not ask this Court to review the decision of the Court of Criminal Appeals in Hannah, we, of course, had no opportunity to state our opinion on the validity of the affidavit in that case, but the same issue is now presented in this case, because the validity of the same affidavit is involved.
The state contends that the affidavit is sufficient and that the decision of the Court of Criminal Appeals should be reversed and that Hannah should be overruled because it is in conflict with this Court’s decision in Ex parte Pugh, 493 So.2d 393 (Ala.1986).
In response to the state’s argument that the affidavit is sufficient, Hudson naturally contends that if the affidavit in the companion case, Hannah, was legally insufficient to support a finding of probable cause, then it likewise provides insufficient probable cause to search in his case.
In Ex parte Pugh, supra, this Court held that the defendant was not entitled to learn the identity of a confidential police infor *948 mant for the purpose of attacking the State’s probable cause for the defendant's warrantless arrest and search. In Ex parte Pugh, supra, this Court relied upon the decision of the United States Supreme Court in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), and held:
“In Alabama, the question of disclosure or nondisclosure of a confidential police informant’s identity for the purposes of challenging probable cause is a matter of discretion for the trial court. New v. State, 337 So.2d 1355, 1358 (Ala.Crim. App.1976). If the court does not abuse its discretion in granting or denying disclosure, we do not disturb its order.”
493 So.2d at 397.
In Ex parte Pugh, this Court quoted from the McCray decision, as follows:
“ ‘In permitting the officers to withhold the informant’s identity, the court was following well-settled Illinois law. When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant’s identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.’ [386 U.S.] at 305, 87 S.Ct. at 1059.”
I am of the opinion that the flexible, easily applied standard set out in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is applicable here. In Illinois v. Gates, the Supreme Court of the United States abandoned the rigid “two-pronged test” under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant’s tip established probable cause for the issuance of a warrant, and the Court adopted a “totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations” by issuing magistrates. 462 U.S. at 238, 103 S.Ct. at 2332. The Court held that the elements under the “two-pronged test” concerning the informant’s “veracity,” “reliability,” and “basis of knowledge” should be understood as closely intertwined issues that could usefully illuminate the commonsense, practical question of whether there was probable cause to believe that contraband or evidence was located in a particular place. In Illinois v. Gates, then-Justice Rehnquist specifically discussed the role of the issuing magistrate and the duty of reviewing courts, as follows:
“As early as Lock v. United States, 7 Cranch 339, 348, 3 L.Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context: ‘[T]he term “probable cause,” according to its usual acceptation, means less than evidence which would justify condemnation_ It imports a seizure made under circumstances which warrant suspicion.’ More recently, we said that ‘the quanta ... of proof’ appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Brinegar [v. United States ], 338 U.S. [160], at 173, 69 S.Ct. [1302], at 1309 [93 L.Ed. 1879 (1949) ]. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate’s decision. While an effort to fix some general, numerically precise degree of certainty corresponding to ‘probable cause’ may not be helpful, it is clear that ‘only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.’ Spinelli, 393 U.S., at 419, 89 S.Ct., at 590. See Model Code of Pre-Arraignment Procedure § 210.1(7) (Prop.Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978).
“We also have recognized that affidavits ‘are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area.’ United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). Like *949 wise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of ‘probable cause.’ See Skadwick v. City of Tampa, 407 U.S. 345, 348-350, 92 S.Ct. 2119, 2121-2122, 32 L.Ed.2d 783 (1972). The rigorous inquiry into the Spinelli prongs and the complex superstructure of evi-dentiary and analytical rules that some have seen implicit in our Spinelli decision, cannot be reconciled with the fact that many warrants are — quite properly, 407 U.S., at 348-350, 92 S.Ct., at 2121-2122 — issued on the basis of nontechnical, common sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. Likewise, given the informal, often hurried context in which it must be applied, the ‘built-in subtleties,’ Stanley v. State, 19 Md.App. 507, 528, 313 A.2d 847, 860 (1974), of the ‘two pronged test’ are particularly unlikely to assist magistrates in determining probable cause.
“Similarly, we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate’s ‘determination of probable cause should be paid great deference by reviewing courts.’ Spinelli, supra, 393 U.S., at 419, 89 S.Ct., at 590. ‘A grudging or negative attitude by reviewing courts toward warrants,’ Ventresca, 380 U.S., at 108, 85 S.Ct., at 745, is inconsistent with the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant; ‘courts should not invalidate warrant[s] by interpreting affidavit[s] in a hyperteehnical, rather than a common sense, manner.’ Id., at 109, 85 S.Ct., at 746.
“If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrant-less searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring ‘the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.’ United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a ‘substantial basis for ... concludpng]’ that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). See United States v. Harris, 403 U.S. [573], at 577-583, 91 S.Ct. [2075], at 2079-2082 [29 L.Ed.2d 723 (1971)]. We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable-cause determinations of magistrates than is the ‘two pronged test.’
“Finally, the direction taken by decisions following Spinelli poorly serves ‘[t]he most basic function of any government’: ‘to provide for the security of the individual and of his property.’ Miranda v. Arizona, 384 U.S. 436, 539, 86 S.Ct. 1602, 1661, 16 L.Ed.2d 694 (1966) (WHITE, J., dissenting.) The strictures that inevitably accompany the ‘two-pronged test’ cannot avoid seriously impeding the task of law enforcement, see e.g., n. 9, supra. If, as the Illinois Supreme Court apparently thought, that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses, see Advisory Committee’s Notes on Fed. Rule Evid. 701, 28 U.S.C.App., p. 570, generally do not provide extensive recitations of the basis of their everyday observations. Likewise, as the Illinois Supreme Court observed in this case, the veracity of persons supplying anonymous *950 tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the Spinelli prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise ‘perfect crimes’. While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.
“For all these reasons, we conclude that it is wiser to abandon the ‘two-pronged test’ established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See Jones v. United States, supra; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the ‘veracity’ and the ‘basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for ... concludpng]’ that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli.”
462 U.S. at 235-39, 103 S.Ct. at 2330-32.
Applying the “totality-of-the-circumstances” test outlined in Illinois v. Gates, I would hold that the issuing magistrate, based upon the affidavit, had a valid legal basis for concluding that there was probable cause to believe that cocaine was located in Hudson’s house.
Based on the foregoing, I would reverse the judgment of the Court of Criminal Appeals.
TORBERT, C.J., concurs.