26 So.3d 464 (2009)
Ex parte Wayne Lamar JENKINS
(In re State of Alabama
v.
Wayne Lamar Jenkins).
1061674.
Supreme Court of Alabama.
January 16, 2009.
As Modified on Denial of Rehearing June 26, 2009.
*465 David B. Whittelsey of Whittelsey, Whittelsey & Poole, P.C., Opelika; and W. David Dawson, Opelika, for petitioner.
Troy King, atty. gen., and Tracy M. Daniel, asst. atty. gen., for respondent.
MURDOCK, Justice.
Wayne Lamar Jenkins was indicted for trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975. He filed a motion to suppress evidence obtained pursuant to what he contended was an unlawful search warrant. After a hearing at which ore tenus evidence was presented and the receipt of briefs from Jenkins and the State, the trial court concluded that the search warrant was not supported by probable cause and that it authorized an unconstitutional general exploratory *466 search of Jenkins's residence. The trial court granted Jenkins's motion to suppress. The State appealed. See Rule 15.7(a), Ala. R.Crim. P.
The Court of Criminal Appeals, in a plurality opinion, reversed the trial court's order granting Jenkins's motion to suppress and remanded the case. See State v. Jenkins, [Ms. CR-05-1833, May 25, 2007] 26 So.3d 458 (Ala.Crim.App.2007). That opinion held that the search warrant was supported by probable cause and that it sufficiently described the items to be seized.
Jenkins petitioned this Court for certiorari review, alleging, in pertinent part, that the decision of the Court of Criminal Appeals conflicts with prior decisions of that court. See Rule 39(a)(1)(D), Ala. R.App. P. We granted Jenkins's petition to consider whether the decision of the Court of Criminal Appeals, insofar as it addressed the issue of whether the search warrant in Jenkins's case was unconstitutionally broad as a general exploratory search warrant, conflicts with its prior decisions on the same point of law.[1]
The plurality opinion of the Court of Criminal Appeals sets out the facts and procedural history of this case:
"The record indicates that on April 22, 2005, Capt. Van Jackson of the Lee County Sheriff's Department received a telephone call from an individual named Ronnie Paul, who resides at Lee Road 482. Paul said that he had seen four men who were attempting to break into his neighbor's home at Lee Road 212. Paul provided a detailed description of the four men and described the vehicle they were driving. Shortly thereafter, sheriff's deputies stopped a vehicle in the vicinity of Lee Road 212 that matched the description given by Paul. Capt. Jackson testified that the two men inside the vehicle admitted that they had tried to break into the residence located at 100 Lee Road 482, Apartment # 2. Based on information received from the two men, the two other suspects were eventually located, and all four were arrested. Capt. Jackson stated in his affidavit in support of his application for a search warrant as follows:
"`After being advised of their rights, all four subjects stated that they had attempted to break into the home because they know that the owners keeps [sic] large sums of marijuana inside the residence. One of the four defendants, Michael Stanford, stated that over the past six months, he has purchased at least an ounce of marijuana from Wayne every week. According to Stanford, each of these transactions occurred in Wayne's home and there was a large quantity of marijuana present inside the residence. The Lee County Sheriff's Office was able to confirm through a tag placed on a vehicle in the front yard of the home that Wayne Lamar Jenkins is the owner of the residence. A check of Jenkins' criminal history revealed that he was arrested in 1979 on drug related charges.'
"(C.R. 48.)
"One of the four suspects apprehended by law-enforcement officers, Michael Stanford, gave an interview and stated that he tried to break into Jenkins's apartment to steal Jenkins's marijuana. Stanford, who knew Jenkins only as `Wayne,' stated that he had been *467 regularly purchasing marijuana from Wayne for around six months. Stanford told police that he would buy an ounce of marijuana each week and that Wayne always had a large supply available. Stanford recalled that on one occasion, Wayne had four gallon containers that were full of marijuana. Stanford said that at the present time, Wayne probably had at least a pound of marijuana in his apartment. Stanford told investigators that he had purchased ½ ounce of marijuana from Wayne approximately two weeks before the attempted burglary. Stanford said that he and his three friends had been watching the apartment on the day before the attempted burglary to observe the neighborhood and prepare for their attempt.
"The three other suspects all stated that they had attempted to burglarize Jenkins's apartment to steal Jenkins's marijuana. They stated that Jenkins kept a large amount of marijuana in his home and that they all decided to break in and steal the contraband. However, none of these three suspects had any personal knowledge that Jenkins kept marijuana inside his apartment."
26 So.3d at 459-60.
A warrant was issued to Capt. Van Jackson on April 22, 2005, that authorized a search of "[a]ny/all vehicles, people, or buildings located on or within the [curtilage] of [Jenkins's] residence" for "[a]ny/all drugs, contraban[d] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items." The opinion of the Court of Criminal Appeals continues as follows:
"During the search, law-enforcement officials found over five pounds of marijuana, plastic bags, a financial ledger, a.38-caliber pistol with a box of ammunition, scales, a grinder, rolling papers, and approximately $5,000 in cash. Officers also found a marijuana cigarette in Jenkins's automobile. In his statement to law-enforcement officers, Jenkins admitted that he had been selling marijuana for approximately six months. He stated that the cash found in his apartment was proceeds from the sale of marijuana. He also stated that he had previously been arrested in Russell County for driving under the influence and possession of marijuana.
"In June 2006, a suppression hearing was held in the trial court. At the hearing, Capt. Jackson testified regarding the circumstances that led to his application for the search warrant. Capt. Jackson stated that on April 22, 2005, the sheriff's office received a telephone call from Ronnie Paul, who told him that he had observed four men attempting to break into a neighbor's home. Capt. Jackson testified that Deputy Bill McQuire responded to the call and talked with Paul. Paul gave Deputy McQuire a description of the four men, along with a description of the car they were driving. Capt. Jackson said that, after receiving that information from Deputy McQuire, he spotted a car matching the description less than ½ mile from the scene of the attempted burglary. Capt. Jackson said that there were two men in the car and that both were taken into custody and interviewed. Before the two men were taken into custody Paul identified them as two of the individuals who attempted to burglarize Jenkins's residence.
"After the two men were taken into custody and interviewed, the names of the two remaining suspects were disclosed. Eventually all four men, including Stanford, were interviewed. Capt. Jackson testified that the four men each said that they had attempted to break in *468 to Jenkins's apartment to steal marijuana. Capt. Jackson established that he had had no contact with Stanford before Stanford's arrest in this case. Capt. Jackson testified that, after reviewing the statements of the suspects, he prepared an affidavit to support the request for a search warrant. Before he applied to the court for the warrant, Capt. Jackson said that he and other officers verified the identity of the individual whom one of the suspects identified as `Wayne' by running a license-plate check through law-enforcement databases with the license number on the automobile parked in front of the residence. That exercise revealed that the owner of the automobile was Wayne Lamar Jenkins. In addition, officers contacted the landlord of the apartment complex, and that individual verified that the apartment was leased to Wayne Lamar Jenkins. Capt. Jackson added that during the course of the investigation, a criminal-background check was conducted, which revealed that Jenkins had had a prior drug arrest in Russell County in 1979.
"Capt. Jackson went to Jenkins's apartment and conducted the search. During the search, Jenkins was present on the porch of the apartment with other officers. After the search concluded, Capt. Jackson interviewed Jenkins inside the apartment. Jenkins was advised of his Miranda [v. Arizona, 384 U.S. 436 (1966),] rights. After he waived his rights, Jenkins gave a statement in which he admitted selling marijuana from his apartment."
Jenkins contends that the search warrant, which did not specifically mention marijuana, was unconstitutionally broad. He contends that the Court of Criminal Appeals' decision conflicts with its prior decisions in Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983), and Peavy v. State, 336 So.2d 199 (Ala.Crim.App.1976).
Jenkins relies in part on the following discussion in Palmer, 426 So.2d at 952:
"Although Ingram stated that his informant had only observed cocaine in the defendant's residence, the warrant authorized a search for `cocaine, ... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act.' The defendant argues that this improperly authorized a `general exploratory search.'
"....
"The fact that there was no probable cause to believe that other controlled substances were within the defendant's residence does not taint the entire warrant so that nothing seized during the course of the execution of the warrant was admissible. That part of the warrant authorizing a search for `any other illegal substance,' although invalid because not based on probable cause, was severable from that portion of the warrant which authorized a search for cocaine."
Among other things, Jenkins also quotes the following from Peavy, 336 So.2d at 202:
"The Fourth Amendment's requirement that a warrant particularly describe the place to be searched and the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken. The search warrant in this case is a dragnet instrument and cannot pass Constitutional muster."
The Fourth Amendment to the United States Constitution provides, in pertinent part, that a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." In its *469 brief to this Court, the State argues as follows:
"General warrants or general searches are prohibited by the Fourth Amendment, `[t]he problem [posed] by the general warrant is not that of intrusion per se, but of a general, exploratory rummaging in a persons belongings.' Adresen [Andresen] v. Maryland, 427 U.S. 463, 480 (1976). Again, while the warrant could have been more carefully worded, when reading it in a common sense fashion, in light of the knowledge of Captain Van Jackson who applied for the warrant, it is clear that the clause in the warrant was sufficiently specific and did not allow for a general, exploratory search of Jenkins's apartment and belongings."
The State then discusses a decision of the Supreme Court of Montana and a decision of the South Carolina Supreme Court:
"In a similar case, the Supreme Court of Montana held:
"`The appellant next argues that the search warrant is deficient because it described the items to be searched for as "drugs and drug paraphernalia." It is the appellant's position that such language is overly broad and could be interpreted to include legal drugs such as aspirin and alcohol.
"`We agree that "drugs and drug paraphernalia" is not the ideal language to use in describing particular items to be searched for in a warrant. Nonetheless, under the circumstances of this case, we find such language to be an adequate description of the items to be seized. Section 46-5-201, MCA, requires that a search warrant particularly describe "the thing, place, or person to be searched and the instruments, articles, or things to be seized." The search warrant in question describes the place to be searched as Broell's 1976 green Camaro, and the things to be seized as "certain items which are contraband/evidence/fruits of the crime ... and are particularly described as being drugs and drug paraphernalia." Moreover, the application for the search warrant reinforces the intended meaning of "drugs and drug paraphernalia" as used in the search warrant. The application states that
"`"[T]he offense of felony possession of dangerous drugs has been committed and ... in the defendant's car ... there are now located certain items which are contraband/evidence/fruits of the crime/instrumentalities and articles used in the commission of a crime and are particularly described as being drugs and drug paraphernalia."
"`....
"`Upon reviewing the search warrant and the application together, the fact that Officer Frederick was to search for and seize illegal drugs is inescapable. The appellant's contention, that in order to constitute probable cause to search, an officer ought to be able to identify what type or types of illegal contraband the officer expects to find, is unsound. As the state points out, no police officer can anticipate what specific wares a suspected drug dealer will possess at any given time.
"`....'

"State v. Broell, [249 Mont. 117, 121-22,] 814 P.2d 44, 46-47 (Mont.1991)....[2]

*470 "... Further, in the case of illegal drugs, they are readily distinguishable from legal items, and thus, the risk that officers executing the warrant might seize other items in addition to the contraband does not exist. Further, since an officer could search in all the same places whether the warrant specified a search for `marijuana' or `illegal drugs' or `drugs' or any other similar term, the warrant in this case does not increase the likelihood of an unauthorized rummaging through Jenkins's personal effects. See State v. Williams, [297 S.C. 404, 406-08,] 377 S.E.2d 308, [309-10] (S.C.1989)."
(Emphasis added.)
Common sense and experience suggest that there is merit in the State's argument. Among other things, it is difficult to understand how, in the circumstances presented here, a warrant worded in the manner the warrant at issue here is worded could result in an unreasonable "rummaging," since as the Supreme Court of South Carolina reasoned, marijuana and other illicit drugs would naturally be located in the same types of places. The Court of Criminal Appeals explained in Palmer, 426 So.2d at 952, that that case did not present a
"situation where the other substances were discovered after the particularly described property in the warrant had been found, for the reasons that the police did not know how much cocaine they were searching for or that it would be located in one specific area and because other controlled substances would naturally be found in places where the cocaine would be located."
Thus, where the police do not know "how much [of a specific substance] they [are] searching for" or whether the substance will be "located in one specific area,"[3] the invasion of a suspect's privacy resulting from the search itself is no greater in a search conducted pursuant to a warrant naming illicit drugs generally as the object of the search than in a search conducted pursuant to a warrant that specifically names marijuana as the object of the search.[4]
*471 At least given the above-quoted conditions, we are unable to conclude that the search and seizure at issue in the present case ran afoul of the Fourth Amendment prohibition against unreasonable searches and seizures. More specifically, we cannot conclude that the Court of Criminal Appeals erred in concluding that the search conducted in the present case was not a "general exploratory search" in violation of the Fourth Amendment requirement that a warrant "particularly describ[e] ... things to be seized."
The result reached by the Court of Criminal Appeals in this case was not foreclosed by its decision in Palmer. Indeed, the Court of Criminal Appeals quoted Palmer for the proposition that "`"`if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character.'"'" Jenkins, 26 So.3d at 463 (quoting Palmer v. State, 426 So.2d at 952). Further, under the conditions extant here, we agree with the argument made by the State to the Court of Criminal Appeals that the holding in Palmer is "essentially identical" to the holding of the Court of Criminal Appeals in the present caseat least in terms of its functional effect. See note 4, supra (discussing the operation of the plain-view doctrine). Moreover, the conclusion in Palmer as to the invalidity of the authorization in the warrant to search for "other illegal substances" appears to be dictum. The "other illegal substances" discovered in the course of the police search for cocaine in Palmer were admissible in that case in any event under the plain-view doctrine. Palmer, 426 So.2d at 952-53. Thus it was unnecessary for the Court of Criminal Appeals to have decided the constitutionality of the "other illegal substances" language in the warrant.[5]
Nor does Peavy v. State present an obstacle to the result reached below. The fact that the outcomes in the two cases were different, even though the warrants in the two cases contained similar language, is not enough. What must be determined is whether the holding in Peavy conflicts with the holding of the Court of Criminal Appeals in the present case. That, in turn, depends on whether the legal question as framed by, and as presented to and answered by, the Court of Criminal Appeals in the present case was the same as, or was narrower than, the legal question answered by that court in Peavy. It was narrower.
In Peavy, the supporting affidavit used the term "controlled substances" in describing the object of the search. 336 So.2d at 200. The warrant in Peavy referred to the object of the search using exactly the same term, "controlled substances." Id. The warrant described the place to be searched, however, as "the person of each and every person present in *472 or near [a particular] mobile home and any mobile vehicle adjacent to said mobile home." 336 So.2d at 201. The case arose from the seizure of a single amphetamine pill from the dashboard of an automobile that did not belong to the owner of the mobile home identified in the search warrant but that was parked near that mobile home.
Despite the use of the same term in describing the object of the search in the affidavit and in the warrant, the court in Peavy began its very briefindeed, conclusoryanalysis with the observation that the search warrant in that case was a "complete departure" from the supporting affidavit. The court took note of the requirements of the Fourth Amendment as to the need for specific descriptions of both the thing to be seized and the place to be searched. It thereafter concluded that the warrant in that case was a "dragnet instrument" that did not pass constitutional muster. 336 So.2d at 202.
In the present case, Jenkins did not present any argument to the trial court to the effect that the language of the warrant was unconstitutionally broad in respect to (1) the description of the object of the search, (2) the description of the place to be searched, or (3) the two descriptions taken together or the totality of the warrant. The trial court, apparently ex mero motu, held the language of the warrant to be overly broad, but only in one of these three respects. Specifically, the trial court held that the language in the warrant describing the object of the search was so lacking in specificity that that language, by itself, caused the warrant as a whole to fail. Indeed, the trial court examined the "location to be searched" language in the warrant and specifically found it to be in compliance with the requirements of the Fourth Amendment.
On appeal to the Court of Criminal Appeals, the State argued that the language of the warrant describing the object of the search was not broader than permitted by the Fourth Amendment. In response, Jenkins argued, for the first time, that the description of the object of the search was unconstitutional. That was the limit of the position that Jenkins asked the appellate court to adopt. He did not argue that the language in the warrant describing the place to be searched contributed to the unconstitutionality of the warrant.
The Court of Criminal Appeals responded to the holding of the trial court and to the question framed for it by the parties by holding that the language describing the object of the search was not so lacking in specificity as to cause the warrant to fail. The holding of the Court of Criminal Appeals, like the holding of the trial court, was limited to that question.
In contrast, the holding in Peavy clearly addressed more than simply the description of the object to be searched. As noted, although the supporting affidavit and the warrant both described the object of the search as "controlled substances," the court in Peavy began its analysis with the criticism that the language of the warrant represented a "complete departure" from its supporting affidavit. It then went on to hold that the warrant constituted an unconstitutional "dragnet instrument." Clearly, Peavy does not stand for the proposition that the use of a term such as "controlled substances" in a warrant to describe the object of the search is sufficient, in and of itself, to invalidate that warrant. The holding in Peavy, therefore, does not conflict with the narrower, converse holding by the Court of Criminal Appeals in the present case.
Moving beyond the issue whether the Court of Criminal Appeals' decision conflicts with Palmer and Peavy, the substantive question ultimately presented in this case is as follows: Is the description in *473 the warrant of the object of the search "[a]ny/all drugs, contraban[d] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items"so lacking in specificity as to cause the warrant to be constitutionally defective?[6] We conclude it is not.
Although there is some authority suggesting a different analysis, see, e.g., State v. Casey, (No. 03-MA-159, Oct. 24, 2004) (Ohio App.2004) (not reported in N.E.2d); United States v. Morris, 977 F.2d 677 (1st Cir.1992), a significant number of courts that have addressed the issue likewise have answered questions such as this in the negative. In so doing, they have offered analysis and announced holdings consistent with those provided by the decisions of Montana and South Carolina cited by the State.[7]
In State v. Olson, 32 Wash.App. 555, 648 P.2d 476 (1982),

*474 "[a] deputy sheriff applied for and obtained *475 a warrant authorizing a search of the defendant's residence. The Affidavit for Search Warrant stated that a reliable confidential informant had `seen a quantity of controlled substance to wit marijuana' therein. A search warrant was issued authorizing a search for `all illicit drugs and controlled substances.' Pursuant to the warrant, defendant's residence was searched and, as charged in the information, opium, cocaine and phenobarbital, all of which are controlled substances, were found therein."
32 Wash.App. at 556, 648 P.2d at 477 (emphasis added). The trial court denied the defendant's motion to suppress based on the alleged failure of the warrant to satisfy the particularity requirement of the Fourth Amendment to the United States Constitution. On appeal, the Washington Court of Appeals affirmed, stating, in part:
"The requirements of particularity are met if the substance to be seized is described with `reasonable particularity' which, in turn, is to be evaluated in light of `the rules of practicality, necessity and common sense.' State v. Withers, 8 Wash.App. 123, 126, 504 P.2d 1151 (1972)....
"....
"... [T]here was no reasonable likelihood that a violation of the defendant's rights would occur. The presence of marijuana in a private residence raises a legitimate inference that marijuana may be present throughout the residence.... Therefore, as a practical matter, the language used in the warrant in the present case could not have expanded the scope of a search for marijuana because, in searching for marijuana, the officers were authorized to inspect virtually every aspect of the premises. Any other contraband inadvertently found in the course of such lawful search would clearly be subject to seizure pursuant to the `plain view' doctrine."
Olson, 32 Wash.App. at 557-59, 648 P.2d at 478-79 (some citations omitted; emphasis added).
The Supreme Court of Florida offered the following analysis in Carlton v. State, 449 So.2d 250 (Fla.1984):
"The [lower appellate court] noted that the description requirements of the United States and Florida Constitutions `must be given a reasonable interpretation consistent with the type or character of the property sought.' ... The [lower appellate] court quoted from a federal district court decision ... for the proposition that a looser description is allowable where the property to be seized is not innocuous but is `prima facie contraband.'...
"....
"... We simply cannot uphold the argument that the validity of a search warrant should depend, in large part, on whether the issuing magistrate had the ability and information to describe the property with a greater degree of particularity than he did. A valid warrant is always based on an affidavit which particularly describes the place to be searched and the person and thing to be seized. § 933.05, Fla. Stat. (1981).
"The particularity requirement of warrants has a two-fold purpose. Perhaps the most frequently quoted statement in this regard is that of Justice Butler in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):
"`The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the *476 discretion of the officer executing the warrant.'
"....
"... We fail to see how justice is being furthered by mandating that a warrant specify which particular controlled substance is to be seized. In most instances where ... probable cause exists to suspect [an] individual of possessing and/or trafficking in a controlled substance, there is a high probability that the offense involves more than one particular controlled substance. We do not believe that a valid purpose is being served by requiring our law enforcement personnel to name each particular substance rather than the term `controlled substances.' We do not think this is such a general term that it allows for abuse and unbridled discretion by law enforcement personnel or allows for a `general search' as that term is used in prior United States Supreme Court or Florida decisions. To hold otherwise would hamper law enforcement unjustifiably."
449 So.2d at 251-52. See also United States v. Horne, 198 Fed.Appx. 865, 871 (11th Cir.2006) (holding that a warrant authorizing a search of a house for "drugs" and "drug paraphernalia," based on a supporting affidavit attesting to the purchase of "nine pieces of rock cocaine," satisfied the United States Constitution's Fourth Amendment requirement for a search warrant to "`particularly describ[e]'" "`the person or things to be seized.' U.S. Const. Amend. IV....").
In State v. Stromberg, 783 P.2d 54, 58 (Utah Ct.App.1989), an informant's affidavit stated that the informant had seen "marijuana pipes" in the defendant's house and that the informant had observed the defendant smoking marijuana in his home on three or four occasions. A warrant authorizing a search for "controlled substances" and "drug paraphernalia" was held to pass constitutional muster:
"The warrant merely specified controlled substances and drug paraphernalia. We are not persuaded that this description is so broad as to offend the fourth amendment's prohibition against warrants not `particularly describing the... things to be seized.' See U.S. Const. amend. IV. The trial court determined that there was a reasonable inference from the affidavit that controlled substances and paraphernalia, other than marijuana and marijuana pipes, would be found in defendant's home. Even if this inference were erroneous, generic descriptions of property, although not favored, have been held permissible in cases involving contraband. See State v. Gallegos, 712 P.2d 207, 209 (Utah 1985)."
As the United States Court of Appeals for the Fourth Circuit stated in United States v. Ladd, 704 F.2d 134, 136 (4th Cir.1983):
"`[T]he test for the necessary particularity is a pragmatic one. The degree of specificity required may necessarily vary according to the circumstances and type of items involved.... There is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of the items to be seized.'
"United States v. Torch, 609 F.2d 1088, 1090 (4th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980) (citations omitted).
"The instant warrant fully satisfies the particularity requirement. The items to be seized were limited to those relating to `the smuggling, packing, distribution and use of controlled substances.' More specificity is not required by the Constitution."
*477 In light of the foregoing, we affirm the judgment of the Court of Criminal Appeals reversing the trial court's order suppressing the evidence at issue. To repeat the conclusion of the Supreme Court of Florida in Carlton, we should take care not to "hamper law enforcement unjustifiably."
AFFIRMED.
STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, LYONS, and WOODALL, JJ., dissent.
COBB, C.J., recuses herself.
SEE, Justice (dissenting).
I respectfully dissent, and I join Justice Woodall's dissent.[8] I write specially to address certain issues raised in the main opinion.
The Lee County Sheriff's Department received information indicating that Wayne Lamar Jenkins had marijuana in his apartment. The sheriff's department obtained a search warrant based on an affidavit stating that Jenkins was in possession of marijuana. The warrant, however, did not mention marijuana; instead, it authorized a search of "[a]ny/all vehicles, people, or buildings located on or within the [curtilage] of [Jenkins's] residence" for "[a]ny/all drugs, contraban[d] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items."
Apparently as a result of the search, Jenkins was indicted for trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975. Jenkins moved to suppress the evidence of the marijuana and other evidence obtained pursuant to what he contended was an unlawful search warrant. The trial court held a hearing on the motion and suppressed the evidence because the search warrant was not supported by probable cause and, therefore, authorized an unconstitutional, general, exploratory search of Jenkins's residence. The State appealed from the trial court's order that granted Jenkins's motion to suppress. See Rule 15.7(a), Ala. R.Crim. P.
The Court of Criminal Appeals reversed the trial court's suppression order. State v. Jenkins, [Ms. CR-05-1833, May 25, 2007] 26 So.3d 458 (Ala.Crim.App.2007). Despite the fact that "the search warrant contained the general term `drugs' rather than a more specific designation `marijuana,'" 26 So.3d at 462, the plurality opinion of the Court of Criminal Appeals held that the search warrant was supported by probable cause and that "the search warrant sufficiently described that law-enforcement officers were authorized to search for illicit drugs, which would include, but not be limited to, marijuana. Thus, the search was lawful, and the trial court erred when it granted Jenkins's motion to suppress." Jenkins, 26 So.3d at 463.
"The Fourth Amendment [to the Constitution of the United States] unambiguously states that `no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" Groh v. Ramirez, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (emphasis omitted). *478 "The Fourth Amendment's requirement that a warrant particularly describe ... the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken." Peavy v. State, 336 So.2d 199, 202 (Ala.Crim.App.1976). Jenkins argues that the warrant in this case violates "[t]he specific command of the Fourth Amendment to the Constitution of the United States ... that no warrants shall issue except those `particularly describing the ... things to be seized.'" Palmer v. State, 426 So.2d 950, 952 (Ala. Crim.App.1983).
In Peavy, police executed a search warrant authorizing a search for "[a]ny controlled substances prohibited by the laws of the State of Alabama." 336 So.2d at 201. The warrant was based upon an affidavit that averred that "there [were] controlled substances" at a certain mobile home. 336 So.2d at 200-01. No other statement was contained in the affidavit or the warrant that further specified the items to be searched for or seized. During the search, police found a single amphetamine pill on the dashboard of Peavy's car, which was parked outside the mobile home. The trial court denied Peavy's motion to suppress the evidence of the pill, and he appealed to the Court of Criminal Appeals. That court stated that "[b]y its very language [the warrant] authorize[d] a general exploratory search. General exploratory searches are forbidden by Federal and State courts alike." 336 So.2d at 202 (citations omitted). The Court of Criminal Appeals reversed the trial court's ruling, holding that "[t]he search warrant in this case is a dragnet instrument and cannot pass Constitutional muster." 336 So.2d at 202.
In the case before us, the warrant to search Jenkins's apartment authorized a search for "[a]ny/all drugs, contraban[d] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items." There is little to distinguish the warrant in this case from the one in Peavy, except that the warrant in Peavy expressly states that only "controlled substances" are to be searched for.
In Palmer, an informant told police that he had seen a large amount of cocaine at Palmer's residence. The warrant that was issued authorized a search for "cocaine,... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act." 426 So.2d at 952. Palmer argued that the warrant authorized a "`general exploratory search.'" 426 So.2d at 952. The Court of Criminal Appeals first noted that "a less precise description is required of property which is, because of its particular character, contraband." 426 So.2d at 952. Nevertheless, the Court of Criminal Appeals held that the informant's testimony that one specific drug was in Palmer's residence did not give rise to probable cause to support the portion of the warrant authorizing a search for controlled substances in general. However,
"[t]he fact that there was no probable cause to believe that other controlled substances were within the defendant's residence does not taint the entire warrant so that nothing seized during the course of the execution of the warrant was admissible. That part of the warrant authorizing a search for `any other illegal substance', although invalid because not based on probable cause, was severable from that portion of the warrant *479 which authorized a search for cocaine."
426 So.2d at 952.
In this case, there was similarly no probable cause to believe that there were drugs other than marijuana in Jenkins's apartment; therefore, as in Palmer, the part of the warrant authorizing a search for any and all "drugs [and] contraban[d]" was invalid. However, unlike Palmer, in this case, there was no specific item, i.e., marijuana, mentioned in the warrant for which probable cause existed. The Supreme Court of the United States has "clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." Groh v. Ramirez, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).
In reaching its decision that the warrant in this case was not unconstitutionally broad, the main opinion relies on several cases decided by various federal and state appellate courts. Reliance on those cases, however, is misplaced. The warrants in those cases generally specified that the object of the search was illegal drugs, illicit drugs, controlled substances, or some other term that denotes illegal drugs, i.e., drugs the possession of which is prohibited by law.[9] The search warrant in Jenkins's case authorized a search for "[a]ny/all drugs, contraban[d]" or for anything that is related to either of them.[10]
The following phrases have been held to be sufficiently descriptive to satisfy the particularity requirement of the Fourth Amendment: "`narcotic drugs'; `any illegal drugs'; `marijuana, dangerous drugs, stimulant drugs, and hallucinogens'; `controlled substances'; and `narcotics, dangerous drugs, and narcotics paraphernalia.'" 2 Wayne R. LaFave, Search and Seizure § 4.6(b) (3d ed. 1996). However, LaFave goes on to note that "a more general reference to items which are contraband in nature but without even identifying their type is insufficient." Id. The search warrant in this case suffers from that precise deficiency. It specifies a class of items as the object of the search, namely, drugs, but it fails to specify whether that object is illegal. Moreover, when the warrant does mention contraband it fails to specify the type of contraband that is the object of the search. A warrant authorizing a search for any illegal object or item is unconstitutionally broad. See United States v. Morris, 977 F.2d 677, 682 (1st Cir.1992) (noting that a warrant containing "the catch-all phrase authorizing seizure of `any other *480 object in violation of the law' is impermissibly broad").
The main opinion cites two cases, United States v. Horne, 198 Fed.Appx. 865, 871 (11th Cir.2006), and State v. Broell, 249 Mont. 117, 814 P.2d 44 (1991), in which, it claims, a warrant authorizing a search for "drugs and drug paraphernalia" was held as sufficiently descriptive for Fourth Amendment purposes. I am not convinced. The description of the warrant provided by the court in Horne is factually ambiguous. At one point, the United States Court of Appeals for the Eleventh Circuit stated that the warrant "limited the search to drugs and drug paraphernalia"; however, the court previously in the opinion had indicated that the search warrant permitted the police to search for "illegal drugs, drug money, and any other drug or drug trafficking paraphernalia." 198 Fed.Appx. at 871, 867.
In Broell the Supreme Court of Montana held that the search warrant authorizing a search for "drugs and drug paraphernalia" was valid when it was read in conjunction with the application for the warrant. The Supreme Court of Montana stated that "when the application [for the search warrant] is signed by the officer who is named in the search warrant and it is that officer who personally serves such warrant, the documents are construed together to determine whether the requirement of particularity describing the thing to be seized has been met." Broell, 249 Mont. at 122, 814 P.2d at 47. The court concluded that "reviewing the search warrant and the application together, the fact that Officer Frederick was to search for and seize illegal drugs is inescapable." Id.
The facts in the case before us are similar to those in Broell; however, the Supreme Court of the United States in Groh v. Ramirez, supra, appears to have rejected the principle adopted by the Supreme Court of Montana that the warrant may be read together with the application for the warrant in order to determine the scope of the warrant. In Groh, a federal agent prepared and signed an application for a search warrant, listing as the items to be seized "`any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers.'" Groh, 540 U.S. at 554, 124 S.Ct. 1284. The warrant was issued, but it failed to identify any of the items that were mentioned in the affidavit. The agent who obtained the warrant led the team that conducted the search. The search uncovered no illegal weapons or explosives. Groh, 540 U.S. at 555, 124 S.Ct. 1284. Even though the federal agent who signed the application executed the search warrant, the Supreme Court held that "[t]he fact that the application adequately described the `things to be seized' does not save the warrant from its facial invalidity." The Supreme Court noted that it is the warrant that "requires particularity" and not "the supporting documents." 540 U.S. at 557, 124 S.Ct. 1284.[11] Thus, Broell, too, is inapposite.
*481 Neither this Court nor the Supreme Court of the United States has directly addressed whether a warrant is unconstitutionally overbroad when the affidavit that supports it specifies only that marijuana is suspected, but the warrant authorizes a search for "[a]ny/all drugs" and contraband. The Supreme Court of the United States has stated, however, that
"unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit."
Groh, 540 U.S. at 560, 124 S.Ct. 1284.
I agree with the main opinion that we must recognize the realities law enforcement faces. See Ex parte Warren, 783 So.2d 86, 96 (Ala.2000) (See, J., concurring in the result) ("The assessment of probable cause turns on the weighing of probabilities in particular factual contexts, and it requires that the collected evidence `be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' [Illinois v. Gates, 462 U.S. 213,] 231 [(1983)]." (citations omitted)). Where the informant's affidavit in support of the petition for the warrant identifies that a variety of illicit drugs were present, I understand that a search warrant that authorizes a search for illicit drugs, drug paraphernalia, etc., may well be justified. Here, however, the informant specified one particular substancemarijuana. The main opinion does not offer any explanation as to why law enforcement needs a warrant to search for any and all drugs and for any and all contraband, and for any and every thing that is related to them"scales, baggies, cash, weapons, documents, etc."when the affidavit specifically identifies marijuana as the item that is suspected to be at the site to be searched. In this case, the warrant did not merely expand the scope of the search from "marijuana" to "marijuana and other illegal drugs," but deleted any mention of marijuana, subsuming the particular thing to be seizedmarijuanainto the general class "[a]ny/all drugs, contraban[d]" or related items of whatever kind, without reference to the affidavit or some explanation for the broadened scope of the search.
The practice undertaken in this case appears to violate the requirement set out in Groh that "particular items described in the affidavit are also [to be] set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search)." 540 U.S. at 560, 124 S.Ct. 1284. See Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995) ("Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala. 1985). Those exceptions include objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry `stop and frisk' situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. *482 Kinard v. State, 335 So.2d 924 (Ala. 1976)."). None of the recognized exceptions to the prohibition against warrantless searches appears to be present or is argued in this case.
The argument that the warrant in this case does not violate the requirement of the Fourth Amendment that no warrant issue except those "particularly describing the ... things to be seized" apparently is premised on the "no harm, no foul" principle. The main opinion concludes that law-enforcement officers could search for marijuana in every place they could search for any other controlled substance and holds that, therefore, the search warrant actually issued did not impinge on Jenkins's Fourth Amendment right to be free of unreasonable searches or seizures.[12] However, a search for marijuana justifies a significantly different search from one for illegal possession of prescription drugsa search for which undoubtedly would fall within the purview of a warrant to search for "[a]ny/all drugs." In such a search, the pills in the aspirin bottle may be analyzed, and the records of one's doctor and pharmacist that may be present in the area to be searched would be subject to review. Under the approach suggested by the main opinion, every affidavit testifying to the probable presence of any particular illegal drug could be expanded into a general warrant providing for an intrusion without reasonable suspicion into the personal pharmacopeia and medical records of that individual.
Finally, I read the main opinion as essentially resting on the notion that anything found during a search for "[a]ny drug, contraban[d]" would in any event have been discovered in a search for marijuana. This application of the "plain view" doctrine turns that doctrine on its head.[13] It is true that law-enforcement officers engaged in an authorized search should not be required to turn a blind eye to what is in plain view. However, the argument here is that unexpected evidence of an illegal activity might be lying in plain view of a properly authorized search; therefore, the warrant can authorize a broader search than the Fourth Amendment would otherwise permit.[14] Because the first prong of the "plain view" doctrine is that "`the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area,'" State v. Calhoun, 502 So.2d 808, 814 (Ala.1986) (quoting Texas v. Brown, 460 U.S. 730, 737, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)), the warrant that *483 authorized the search has to be constitutionally sound, including its particular description of the things to be seized, beforenot afterinvoking the plain-view doctrine.
I respectfully dissent.
WOODALL, Justice (dissenting).
In this case, it is obvious that there was probable cause for the issuance of a warrant to search for marijuana. However, the search warrant did not mention marijuana. Instead, it authorized a search of "[a]ny/all vehicles, people, or buildings located on or within the [curtilage] of [Jenkins's] residence" for "[a]ny/all drugs, contraban[d] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items." It is this language that Jenkins contends is unconstitutionally broad, and I agree with him.
The Fourth Amendment to the United States Constitution provides, in pertinent part, that a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." (Emphasis added.) "The Fourth Amendment's requirement that a warrant particularly describe ... the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken." Peavy v. State, 336 So.2d 199, 202 (Ala.Crim.App. 1976). Quite simply, "[t]he specific command of the Fourth Amendment to the Constitution of the United States is that no warrants shall issue except those `particularly describing the ... things to be seized.'" Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983).
The plurality opinion of the Court of Criminal Appeals held that the search warrant sufficiently described the things to be seized.
"Here, we believe that the trial court incorrectly determined that the search warrant authorized an unconstitutional `general search' for all drugs in Jenkins's apartment. We recognize that
"`[g]eneral exploratory searches and seizures, with or without a warrant, can never be justified and are forbidden and condemned. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). The specific command of the Fourth Amendment to the Constitution of the United States is that no warrants shall issue except those "particularly describing the ... things to be seized."
"`However, the description of things to be seized contained in the warrant under review is not so broad that the authorization constitutes a general exploratory search. Certainly, "an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." Vonder[A]he v. Howland, 508 F.2d 364 (9th Cir.1974); W. LaFave, 2 Search and Seizure, Section 4.6, n. 11 (1978) (hereinafter Search).
"`However, a less precise description is required of property which is, because of its particular character, contraband.
"`"`If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a *484 specific particular description of the property is unnecessary and it may be described generally as to its nature or character.'"
"`2 Search, p. 101, citing People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970).'
"Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983).
"Thus, in the instant case, the search warrant sufficiently described that law-enforcement officers were authorized to search for illicit drugs, which would include, but not be limited to, marijuana. Thus, the search was lawful, and the trial court erred when it granted Jenkins's motion to suppress."
State v. Jenkins, [Ms. CR-05-1833, May 25, 2007] 26 So.3d 458, 463 (Ala.Crim.App.2007)(emphasis added). Stated simply, the plurality opinion, after quoting general principles of law, merely concluded, with no legal or factual analysis, that the description in the warrant of the property to be seized was sufficient.
In his special writing, Judge Welch correctly explained that the lead opinion's reliance on Palmer was misplaced:
"In its opinion reversing the trial court's order granting Jenkins's pretrial motion to suppress evidence, the main opinion holds that the trial court's ruling was in error because, it reasons, the warrant authorized law-enforcement officers to conduct a search for `drugs,' and that description was constitutionally sufficient. In reaching its conclusion, the main opinion relies upon this Court's decision in Palmer v. State, 426 So.2d 950 (Ala.Crim.App.1983). However, because Palmer is distinguishable from the instant case, I disagree with the main opinion's analysis as to this issue....
"Palmer involved a challenge to a warrant that authorized a search for `"cocaine, ... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act."' 420 So.2d at 952. This Court determined that the portion of the warrant authorizing a search specifically for cocaine was constitutionally sufficient and was severable from the portion authorizing a search for `any other illegal substance,' which was deemed invalid for lack of probable cause. Ultimately in Palmer the drugs were admitted under the plain-view exception to the warrant requirement."
Jenkins, 26 So.3d at 464 (Welch, J., concurring in the result).
In its brief to the Court of Criminal Appeals, the State cited only Palmer and argued only that Palmer is "essentially identical" to Jenkins's case. However, as Judge Welch explained, Palmer is clearly distinguishable. Before this Court, the State acknowledges that the Court of Criminal Appeals "relied on Palmer only for general principles of law concerning general exploratory searches," State's brief, at 16-17, and does not even attempt to explain how those general principles support the Court of Criminal Appeals' holding in this case.
Jenkins contends that the Court of Criminal Appeals' decision conflicts with its prior decision in Peavy, supra. In Peavy, the affidavit for a search warrant attested to the presence of "`controlled substances in a mobile home located [at a particular place].'" 336 So.2d at 200. The search warrant directed "`immediate search on the person of each and every person present in or near said mobile home and any motor vehicle adjacent to said mobile home for the following property: Any controlled substances prohibited by the laws of the State of Alabama.'" 336 So.2d at 201 (emphasis added). The Court of Criminal Appeals held that the *485 search warrant was unconstitutionally broad.
"We turn now to a consideration of the search warrant and note at once that it is a complete departure from the affidavit. By its very language it authorizes a general exploratory search. General exploratory searches are forbidden by Federal and State courts alike. Haynes v. State, 50 Ala.App. 96, 277 So.2d 372 [(1973)]; Go-Bart v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 [(1931)]; Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 [(1965)]; Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 [(1967)].
"... The Fourth Amendment's requirement that a warrant particularly describe the place to be searched and the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken. The search warrant in this case is a dragnet instrument and cannot pass Constitutional muster."
336 So.2d at 202.
There is no material difference between the search warrant condemned as unconstitutionally broad in Peavy and the search warrant issued in this case. Neither warrant identified any particular drug, and both warrants authorized the search of a particular residence, as well as persons or vehicles at or near the residence. Faced with Peavy, the State candidly admits that "the search warrant [in this case] could have been worded more carefully." State's brief, at 15. I agree with Jenkins that the Court of Criminal Appeals' decision in Jenkins conflicts with their prior decision in Peavy.
Before this Court, the State makes three new arguments in support of the Court of Criminal Appeals' reversal of the trial court's order granting Jenkins's motion to suppress. First, it argues that "reading the warrant in connection with the supporting affidavit clearly identified the specific property to be seizedmarijuana and contraband or items connected with the use, sale, or storage of marijuana." State's brief, at 21. Second, it argues that "the evidence was admissible pursuant to the good-faith exception to the exclusionary rule in United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)." State's brief, at 22. Third, it argues that, "since an officer could search in all the same places whether the warrant specified a search for `marijuana' or `illegal drugs' or `drugs' or any similar term, the warrant in this case does not increase the likelihood of an unauthorized rummaging through Jenkins's personal effects." State's brief, at 21-22. However, these arguments come too late, and this Court should not consider them. It is fundamental that "[a]n argument not made on appeal is abandoned or waived." Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003). See also Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995). Consequently, the Court of Criminal Appeals' reversal of the trial court's order should not be sanctioned based upon arguments never made to the appellate court.
For the foregoing reasons, the judgment of the Court of Criminal Appeals should be reversed, and the case should remanded to that court.
SEE, J., concurs.
NOTES
[1] The Court of Criminal Appeals concluded that the materials supplied by the State in support of the application for the search warrant provided probable cause for the issuance of a search warrant. Jenkins, 26 So.3d at 458. We declined certiorari review as to that holding.
[2] Justice See contends in his dissenting opinion that Broell is inapposite in light of the decision of the United States Supreme Court in Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Groh, however, is distinguishable. The application described the objects to be searched for in Groh as

"`any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers.'"
540 U.S. at 554, 124 S.Ct. 1284. In the warrant, however,
"in the space set aside for a description of the items to be seized, [it was] stated that the items consisted of a `single dwelling residence ... blue in color.' In other words, the warrant did not describe the items to be seized at all."
540 U.S. at 558, 124 S.Ct. 1284.
[3] The quoted conditions are in accord with those contemplated by the following statement in one well-respected treatise: "[I]t has been held that evidence is admissible ... where the description is too general in the probable cause sense but yet did not broaden the intensity or length of the search." Wayne R. LaFave, Search and Seizure § 4.6(f) n. 148 (4th ed. 2004) (emphasis added).
[4] Further, although our analysis does not depend on the use of the "plain view" doctrine, it also may be noted that the invasion of a suspect's privacy that results from a seizure of his personal property likewise is no different in the two searches, given the fact that the locations in which the authorities may search will be the same.

"Since the police had a valid warrant to search for one controlled substance in the defendant's residence, they could properly seize any other article of incriminating character, including other controlled substances, they inadvertently came across in the course of the search. `[I]t is generally the rule that when officers in the course of a bona fide effort to execute a search warrant for narcotics or dangerous drugs discover articles which although not included in the warrant are reasonably identifiable as contraband, they may seize them whether they are in plain sight or come into plain sight subsequently as a result of the officers' effort.' 28 C.J.S. Drugs And Narcotics Supplement, Section 138 (1974)."
Palmer, 426 So.2d at 952-53 (citation omitted). But, of course, in the present case, the police did not even go this far. The drug specifically mentioned in the supporting affidavit was marijuana; that was the only drug seized and the only drug in relation to which Jenkins was convicted.
[5] As an aside, we note that the Court of Criminal Appeals' conclusion in Palmer as to the unconstitutionality of the "other illegal substances" language is contrary to substantial authority from other jurisdictions discussed infra.
[6] Although Jenkins argues that the reference to "[a]ny/all drugs" in the warrant is even broader than the "reference to `controlled substances' in Peavy," under the circumstances presented and in light of the full description of the object of the search as quoted in the text, that description"[a]ny/all drugs"can reasonably be read only as authorizing the search for illegal drugs and related paraphernalia.
[7] Justice Woodall's dissent criticizes the State, and by extension this opinion, for reliance on what it describes as an "argument" made for the first time to this Court. Specifically, the dissent notes that the State argues that "`since an officer could search in all the same places whether the warrant specified a search for "marijuana" or "illegal drugs" or "drugs" or any similar term, the warrant in this case does not increase the likelihood of an unauthorized rummaging through Jenkins's personal effects.' State's brief, at 21-22." 26 So.3d at 485. The dissent asserts that this argument, not having been made by the State in its brief to the Court of Criminal Appeals, comes too late. The dissent relies in this regard on the proposition stated in Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003), that "`[a]n argument not made on appeal is abandoned or waived.'" 26 So.3d at 485.

Properly viewed, however, the rule upon which the dissent attempts to rely is one that generally prevents an appellant from raising on appeal a question or theory that has not been preserved for appellate review, not the provision to a higher court of an additional specific reason or authority for a theory or position asserted by the party in the lower court. The fundamental rule in this regard, as stated in Corpus Juris Secundum, is that a "higher court normally will not consider a question which the intermediate court could not consider." 5 C.J.S. Appeal and Error § 977 (2007). However, "[a]lthough on appeal from an intermediate court the higher court may be limited to the questions of law raised or argued at the trial, it is not limited to the arguments there presented." 5 C.J.S. Appeal and Error § 978 (2007) (emphasis added). In other words, "[n]ew arguments or authorities may be presented on appeal, although no new questions can be raised." 4 C.J.S. Appeal and Error § 297 (emphasis added).
In Kerbs v. California Eastern Airways, Inc., 33 Del.Ch. 69, 80, 90 A.2d 652, 659 (1952), for example, the court put it this way:
"It should be noted that the plaintiffs did not call Section 9 of the General Corporation Law to the [trial court's] attention, but argued solely that the presence of interested directors could not be ignored in determining whether the plan received a majority favorable vote at the Board's meeting. While the plaintiffs did not urge this precise reason for the illegality of the directors' act upon the Chancellor, they did, however, argue its illegality. We will not permit a litigant to raise in this court for the first time matters not argued below where to do so would be to raise an entirely new theory of his case, but when the argument is merely an additional reason in support of a proposition urged below, there is no acceptable reason why in the interest of a speedy end to litigation the argument should not be considered. We think the point falls within the class of additional reasons supporting the plaintiffs' theory."
(Emphasis added.) See also Board of Comm'rs of Orleans Levee Dist. v. Shushan, 197 La. 598, 611, 2 So.2d 35, 39-40 (1941) ("The rule [that an appellate court will not consider, for the first time, matters not raised in the court of original jurisdiction] has reference only to controversies arising under the pleadings or the evidence and not to contentions urged in the argument of counsel. The Supreme Court decides a case on the issues presented by the pleadings or the evidence, and not on the argument of counsel in the court below, or even on the reasons assigned by the trial judge.").
In the earlier case of Persky v. Bank of America National Ass'n, 261 N.Y. 212, 185 N.E. 77 (1933), the Court began by noting that
"`it is well settled that this court will not, for the purpose of reversing a judgment, entertain questions not raised or argued at the trial, or upon the intermediate appeal.'"
261 N.Y. at 217, 185 N.E. at 79 (quoting Martin v. Home Bank, 160 N.Y. 190, 199, 54 N.E. 717 (1899) (emphasis added)). The court thereafter explained that this rule was not applicable in the case before it:
"In our review we are confined to the questions raised or argued at the trial but not to the arguments there presented. `Nor is it material whether the case was well presented to the court below, in the arguments addressed to it. It was the duty of the judges to ascertain and declare the whole law upon the undisputed facts spread before them; and it is our duty now to give such judgment as they ought to have given.' (Oneida Bank v. Ontario Bank, 21 N.Y. 490, 504 [(1860)].)"
261 N.Y. at 218, 185 N.E. at 79 (all but first emphasis added).
The foregoing principles have been recognized in Alabama cases. Although not dealing with the precise appellate review issue presented here, the case of Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004), addressed the possibility of a litigant "miscalculat[ing] the applicability of the appropriate rule of law." The Court cited Williams-Guice v. Board of Education of Chicago, 45 F.3d 161, 164 (7th Cir.1995), for the proposition that
"`litigants' failure to address the legal question from the right perspective does not render [the appellate court] powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances."
Also in Hodurski, this Court quoted with approval from another federal decision:
"`"Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility."'"
Hodurski, 899 So.2d at 960 (quoting Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed. Cir.), cert. denied, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002), quoting in turn Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir. 1972)).
In Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45, 50 (Ala. 1980), the Court explained that "[t]he rule requiring adherence to the theory relied on below ... does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue. 5 Am.Jur.2d, Appeal and Error, § 546 at 32." (Emphasis added), relied upon in Associated Gen. Contractors Workers Compensation Self Ins. Fund v. Williams, 982 So.2d 557 (Ala.Civ.App.2007). See also Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1333 (Ala.Civ.App. 1987) (apparently stating the general rule discussed above, albeit using different terminology, namely "that an appellant may present new theories in support of its position for the first time on appeal" (emphasis added)).
In the present case, the question whether the language of the warrant describing the object of the search was specific enough to satisfy the "thing-to-be-seized" requirement within the so-called "particularity clause" of the Fourth Amendment to the United States Constitution has existed throughout. In response to a motion to suppress, the trial court decided this issue against the State and in favor of Jenkins. The trial court's order analyzed the issue in-depth and concluded that the language of the warrant did not satisfy the particularity clause of the Fourth Amendment. The State timely sought review of this order in the Court of Criminal Appeals pursuant to Rule 15.7(a), Ala. R.Crim. P., maintaining that the trial court had erred in its ruling against the State on this issue. The State, by its citation to this Court of the Montana and South Carolina Supreme Court cases quoted in the text, is simply giving this Court the benefit of an additional "precise reason" and authority as to why, as a matter of law, the trial court wrongly decided this issue.
[8] As explained herein, I agree with Justice Woodall that the language in the warrant at issue here distinguishes this case from Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App. 1983). I also agree with Justice Woodall that the warrant in this case is unconstitutionally broad and that, therefore, this case conflicts with Peavy v. State, 336 So.2d 199, 202 (Ala. Crim.App.1976).
[9] See United States v. Ladd, 704 F.2d 134, 136 (4th Cir. 1983) (warrant authorizing a search for items related to "`smuggling, packing, distribution and use of controlled substances'"); Carlton v. State, 449 So.2d 250, 250 (Fla. 1984) (warrant authorizing a search for "all controlled substances" and other items relating to the sale or possession of controlled substances in violation of Florida law); State v. Williams, 297 S.C. 404, 407, 377 S.E.2d 308, 310 (1989) (warrant authorizing a search for "any illegal drugs"); State v. Stromberg, 783 P.2d 54, 55 (Utah Ct.App. 1989) (warrant authorizing search for "controlled substances" and "drug paraphernalia"); State v. Olson, 32 Wash.App. 555, 556, 648 P.2d 476, 477 (1982) (warrant authorizing a search for "all illicit drugs and controlled substances").
[10] It could be argued that listing "contraban[d]" as an object of the search specifies that the purpose of the search was to find and seize illegal drugs. However, this argument would be problematic because "[a]ny/all drugs" is separated from the word "contraban[d]" by a comma, and, therefore, "contraban[d]" cannot be read to describe the term "[a]ny/all drugs." In fact, the listing of "contraban[d]" as a separate and independent object of the search would allow law enforcement executing the search warrant to search for and seize virtually any illegal item or substancebe it a drug or not.
[11] The Supreme Court in Groh does allow for a warrant to refer to other documents in order to satisfy the particularity requirement if "the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Groh, 540 U.S. at 557-58, 124 S.Ct. 1284. In his reply brief, Jenkins points out that "[t]here is no clear record the affidavit was attached to clarify any alleged ambiguity [in the warrant], and, although Deputy Jackson was present during the execution of the warrant, there is no record he explained the contents of the affidavit to the other officers and gave them an opportunity to read it." Jenkins's reply brief at 7. Therefore, it would appear that Jenkins has met his burden under Groh of proving that the search warrant was invalid, even if Groh implicitly requires the defendant to prove the nonexistence of incorporation of extrinsic materials. See 5 Wayne R. LaFave, Search and Seizure § 11.2(b) (3d ed. 1996) (stating that "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution").
[12] Because I address and reject this proposition, it is unnecessary for me to decide whether it is a new theory, raised for the first time by the State on appeal, or an additional specific reason given in support of the State's theory. See 26 So.3d at 473.
[13] This Court stated in State v. Calhoun, 502 So.2d 808, 814 (Ala.1986):

"In Texas v. Brown, [460 U.S. 730, 736-37 (1983),] Justice Rehnquist, writing for the plurality, explained:
"`In the Coolidge [v. New Hampshire, 403 U.S. 443 (1971),] plurality's view, the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area.... Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext.... Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure....'"
[14] In turn, I presume, this broader search would offer its own expanded plain-view curtilage, thereby fueling its own expansion.